UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HARLEYSVILLE WORCESTER INSURANCE
COMPANY and HARLEYSVILLE INSURANCE
COMPANY,

                        Plaintiffs,

                -against-

CONSIGLI & ASSOCIATES, LLC f/k/a T.G.
NICKEL & ASSOCIATES, LLC; DOMESTIC
PLUMBING CORP.; HIG SERVICES INC.;
ZURICH AMERICAN INSURANCE COMPANY;
99 WALL DEVELOPMENT INC.; CATLIN
INSURANCE COMPANY, INC.; and STARR
INDEMNITY & LIABILITY COMPANY,

                      Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

21-CV-00934 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

      This insurance coverage case arises out of an underlying breach of contract and quasi-contract action in New York State Supreme Court in Manhattan concerning water damage to a construction project: *99 Wall Development Inc. v. Consigli & Associates, LLC, f/k/a T. G. Nickel & Associates, LLC*, Index No. 656973/2017 (the "underlying action").  Plaintiffs Harleysville Worcester Insurance Company and Harleysville Insurance Company (together, "Harleysville") have expended costs defending its policyholder Defendant Consigli & Associates, LLC *f/k/a* T.G. Nickel & Associates, LLC ("Consigli") in the underlying action.  Now, on summary judgment in this federal action, Harleysville seeks a declaration that it has no duty to defend or indemnify Consigli in the underlying action or, in the alternative, if it does have a duty to defend or indemnify Consigli, then it is entitled to contribution from other liability insurers: Defendants Catlin Insurance Company, Inc. ("Catlin"), Zurich American Insurance Company ("Zurich"), and Starr Indemnity & Liability Company ("Starr").  Catlin, Zurich, and Starr all independently

1

contest this and seek, *inter alia*, declarations absolving them of any duty to defend or indemnify Consigli or to contribute to its defense.  Zurich also separately moves for declarations (i) that an excess policy provided by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is primary to any coverage that Zurich may owe to Consigli, which National Union separately contests, and (ii) that Zurich's affirmative defenses of untimely notice and the prejudice resulting therefrom preclude any responsibility it may have otherwise had to provide coverage to Consigli relating to the underlying action.

Thus, before the Court are, *first*, seven motions for summary judgment from five separate movants: Zurich (Dkt. Nos. 243, 244, 245), Starr (Dkt. No. 254), Harleysville (Dkt. No. 267), National Union (Dkt. No. 271), and Catlin (Dkt. No. 275); *second*, Consigli's motion to strike the Declaration of Jeffrey A. Beer Jr. (Dkt. No. 287), which was filed in support of Harleysville's motion for summary judgment; and *third*, Harleysville's motion for default judgment against Defendants Domestic Plumbing Corp. ("Domestic") and Hig Services Inc. ("Hig," and together with Domestic, the "Defaulting Defendants") (Dkt. No. 252).

For the reasons set forth in this Opinion, the Court GRANTS Zurich's motions for summary judgment, GRANTS Catlin's motion for summary judgment, GRANTS Starr's motion for summary judgment, DENIES National Union's motion for summary judgment, and DENIES Harleysville's motion for summary judgment.  The Court further DENIES Consigli's motion to strike as moot, and DENIES Harleysville's motion for default judgment against the Defaulting Defendants without prejudice to renewal at the appropriate time.

**BACKGROUND**

## I.    FACTUAL BACKGROUND[1]

### A.  The Parties

Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff 99 Wall Development Inc.

("99 Wall") is a New York corporation with its principal place of business located in New York,

New York.  Dkt. No. 171, Second Amended Complaint ("SAC") ¶ 12.  99 Wall was the

development company for the construction project located at 99 Wall Street, New York, NY (the

"Project") to which the insurance policies and facts described herein pertain.  JSUF ¶ 9.

Defendant, Counterclaim-Plaintiff, and Third-Party Plaintiff Consigli (formerly T.G.

Nickel & Associates, LLC ("Nickel")[2]) is a New York limited liability company whose members

---

[1] The facts set forth in this Opinion are drawn from the parties' submissions in connection with their motions for summary judgment.  The Court primarily sources facts from the parties' Rule 56.1 Joint Statement of Undisputed Facts (Dkt. No. 256, "JSUF") and the exhibits appended thereto.  The Court also relies on the Rule 56.1 Statements provided by the parties separately, when appropriate.  Specifically, where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id*. at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Where one party agrees fully with a fact set forth in the other's Rule 56.1 Statement, the Court cites only to the Rule 56.1 Statement of the party originally stating the fact.  Citations to a Rule 56.1 Statement incorporate by reference the documents cited therein.

For ease of reference, the Court refers to the memoranda of law in support of and in opposition to the various motions as follows: Dkt. No. 270 ("Harleysville Mot."); Dkt. No. 309 ("Harleysville Opp."); Dkt No. 326 ("Harleysville Reply"); Dkt. No. 289 ("Consigli Opp."); Dkt. No. 288 ("Consigli Strike Mot."); Dkt. No. 330 ("Consigli Strike Reply"); Dkt. No. 246 ("Zurich Mot."); Dkt. No. 290 ("Zurich Opp."); Dkt. No. 323 ("Zurich Reply"); Dkt. No. 276 ("Catlin Mot."); Dkt. No. 286 ("Catlin Opp."); Dkt. No. 318 ("Catlin Reply"); Dkt. No. 255 ("Starr Mot."); Dkt. No. 311 ("Star Opp."); Dkt. No. 325 ("Starr Reply"); Dkt. No. 272 ("National Union Mot."); Dkt. No. 285 ("National Union Opp."); Dkt. No. 324 ("National Union Reply").  Declarations or affidavits submitted in support of and in opposition to the various motions are referred to by the last name of the declarant.

[2] Subsequent to and unrelated to the events described herein, the entity known as Nickel became Consigli.  *See* JSUF ¶ 5.  In this Opinion, the entity is referred to as Consigli wherever possible consistent with factual accuracy.

3

are residents of the State of New York.  SAC ¶ 6; JSUF ¶ 5.  Consigli served as the construction manager for the Project.  JSUF ¶ 9.

Defendant Domestic is a New York corporation with its principal place of business located in Staten Island, New York.  SAC ¶ 7.  Consigli hired Domestic as a subcontractor for the Project.  JSUF ¶ 10.

Defendant Hig is a New York corporation with its principal place of business located in West Babylon, New York.  SAC ¶ 8.  Consigli hired Hig as a subcontractor for the Project. JSUF ¶ 11.

Plaintiffs and Counterclaim-Defendants Harleysville are Ohio corporations with principal places of business in Columbus, Ohio.  SAC ¶ 5.  As discussed below, Harleysville issued three relevant insurance policies to parties in this matter (the "Harleysville Policies").  *See* JSUF ¶¶ 1– 3.

Defendant, Crossclaim-Plaintiff, Crossclaim-Defendant, and Third-Party Plaintiff Zurich is a New York corporation with its principal place of business located in New York, New York. SAC ¶ 9.  As discussed below, Zurich issued two relevant insurance policies to parties in this matter (the "Zurich Policies").  *See* JSUF ¶¶ 5–6.

Defendant Catlin is a Texas corporation with its principal place of business located in Atlanta, Georgia.  SAC ¶ 10.  As discussed below, Catlin issued a primary insurance policy to 99 Wall.  *See* JSUF ¶ 7.

Defendant Starr is a Texas corporation with its principal place of business located in New York, New York.  SAC ¶ 11.  As discussed below, Starr issued an excess insurance policy to 99 Wall.  *See* JSUF ¶ 8.

Third-Party Defendant National Union is a Pennsylvania company, with its principal place of business located in New York, New York.  Dkt. No. 174 (Zurich's Third-Party Complaint) ¶ 1.   As discussed below, National Union issued an excess insurance policy to Hig.  *See* JSUF ¶ 4.

## B.  The Project and the Insurance Policies

By contract dated February 24, 2015, 99 Wall hired Consigli as the construction manager for the Project.  *Id*. ¶ 9; *see also* JSUF Ex. I.  In April and May 2015, Consigli hired Hig and Domestic as subcontractors for the Project.  JSUF ¶¶ 10–11; Exs. J, K.  The subcontracts between Consigli and Hig, as well as between Consigli and Domestic, include identical indemnification, insurance, and waiver of subrogation terms.  *See* JSUF Exs. K, J; *see also* Dkt. No. 249 ("Zurich 56.1") ¶¶ 2–5.  Specifically with respect to indemnification, the Hig and Domestic subcontracts each respectively provide:

> [t]o the fullest extent permitted by law, in addition to, and not in derogation of, the Subcontractor's responsibility to indemnify as set forth in other Contract Documents, the Subcontractor shall indemnify, defend with counsel reasonably acceptable to the Contractor … and hold harmless the Contractor … from and against all claims, liabilities, damages, losses and expenses, including but not limited to all costs, fees and expenses of such defense, (including without limitation all attorneys' fees and expenses, court costs, expert witness fees and expenses, and any resulting settlement, judgment, or award), including but not limited to attorneys' fees arising out of or resulting from any performance of and/or failure to perform the Work, but only to the extent caused by the acts and/or omissions or a breach of contract of the a [sic] Subcontractor, a Sub-Subcontractor to Subcontractor, and anyone any [sic] person or entity directly or indirectly employed by them or any person or entity for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

Zurich 56.1 at ¶¶ 3, 5.  The subcontracts also require that Hig and Domestic "indemnify and hold harmless [Consigli] from and against any costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by [Consigli] in enforcing any of the Subcontractor's defense, indemnity, and hold harmless obligations under Subcontract."  *Id.*  Furthermore, the

subcontracts required Hig and Domestic to procure primary and excess coverage that would "apply as *primary and non-contributing insurance before any other insurance*." *Id.* ¶ 4 (emphasis added).

As required by the relevant contracts and subcontracts, 99 Wall, Consigli, Domestic, and Hig each procured insurance policies to cover certain damages relating to the work performed on the Project, as follows:

1.     **The Harleysville-Domestic Primary Policy**.  Harleysville issued a primary liability policy to Domestic, under policy number MPA00000089724P, effective from February 4, 2016 to February 4, 2017, with per occurrence limits of $1 million and aggregate limits of $2 million (the "Harleysville-Domestic Primary Policy").  JSUF ¶ 1.  The Harleysville-Domestic Primary Policy requires Harleysville to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies[,]" and requires Harleysville to "defend the insured against any 'suit' seeking those damages." *Id.*; *see also* JSUF Ex. A.  The Harleysville-Domestic Primary Policy includes coverage for additional insureds on a primary and non-contributory basis for liability for "property damage" "caused, in whole or in part," by Domestic's acts or omissions, or the acts or omissions of those acting on Domestic's behalf. *Id.*

2.     **The Harleysville-Domestic Excess Umbrella Policy**.  Harleysville also issued an umbrella liability policy to Domestic under policy number CMB00000089725P, effective from February 4, 2016 to February 4, 2017, with per occurrence and aggregate limits of $5 million (the "Harleysville-Domestic Excess Umbrella Policy").  JSUF ¶ 2.  The Harleysville-Domestic Excess Umbrella Policy states that Harleysville "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of … 'property damage'" and that Harleysville

6

has "the right and duty to defend the insured against any 'suit' seeking damages for such …
'property damage' when the 'underlying insurance' does not provide coverage or the limits of
'underlying insurance' have been exhausted." *Id.*; *see also* JSUF Ex. B. Furthermore, it states
that when Harleysville has "no duty to defend, [it] will have the right to defend, or to participate
in the defense of, the insured against any other 'suit' seeking damages to which this insurance
may apply." *Id.*

      3.    **The Harleysville-Hig Primary Policy**. Harleysville issued a primary liability
policy to Hig under policy number MPA00000057268V, effective from April 4, 2016 to April 4,
2017, with per occurrence limits of $2 million and aggregate limits of $4 million (the
"Harleysville-Hig Primary Policy"). JSUF ¶ 3. The Harleysville-Hig Primary Policy requires
Harleysville to "pay those sums that the insured becomes legally obligated to pay as damages
because of … 'property damage' to which this insurance applies[,]" and to "defend the insured
against any 'suit' seeking those damages." JSUF Ex. C. The Harleysville-Hig Primary Policy
includes coverage for additional insureds on a primary and non-contributory basis for liability for
"property damage" "caused, in whole or in part," by Hig's acts or omissions. *Id.*; *see also* JSUF
Ex. C.

      4.    **The National Union-Hig Excess Policy**. National Union issued an excess
liability policy to Hig under policy number BE038239687, effective from April 4, 2016 to April
4, 2017, with per occurrence and aggregate limits of $9 million (the "National Union-Hig Excess
Policy"). JSUF ¶ 4. The National Union Hig Excess Policy contains provisions stating National
Union "will pay on behalf of the Insured those sums in excess of the Retained Limit that the
Insured becomes legally obligated to pay as damages by reason of liability imposed by law
because of … Property Damage … to which this insurance applies or because of … Property

Damage to which this insurance applies assumed by the Insured under an Insured Contract," and that National Union "will have the right and duty to defend any Suit against the Insured that seeks damages for … Property Damage … covered by this policy, even if the Suit is groundless, false or fraudulent when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss to which this policy applies and the total applicable limits of Other Insurance have been exhausted." *Id.*; *see also* JSUF Ex. D.  The National Union-Hig Excess Policy includes coverage for additional insureds on a primary and non-contributory basis that are covered by the "Underlying Insurance" (*i.e.*, the Harleysville-Hig Primary Policy) but includes a carve-out for "liability arising out of the sole negligence of such person or organization for its own acts or omissions or those of its employees or anyone else acting on its behalf."  JSUF Ex. D.

   5. **The Zurich-Consigli Primary Policy**.  Zurich issued a primary liability policy to Consigli under policy number GLO 0230492-00, effective from December 30, 2015 to December 30, 2016, with per occurrence limits of $2 million and aggregate limits of $4 million (the "Zurich-Consigli Primary Policy").  JSUF ¶ 5.  The Zurich-Consigli Primary Policy contains "Duties in the Event of Occurrence… Claim or Suit" that includes that Zurich be "notified as soon as practicable of" an "'occurrence' . . . which may result in a claim," or a claim made or a suit brought against any insured under the policy.  *Id.*; *see also* JSUF Ex. E.  The duties further require that any insured must "[i]mmediately send [Zurich] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'."  JSUF Ex. E.  The Zurich-Consigli Primary Policy further states that Zurich cannot be sued for coverage "unless all of [the Zurich-Consigli Primary Policy] terms have been fully complied with."  *Id*.

6.      **The Zurich-Consigli Excess Policy**.  Zurich also issued an excess liability policy to Consigli under policy number SXS 0230527-00, effective from December 30, 2015 to December 30, 2016, with per occurrence and aggregate limits of $3 million (the "Zurich-Consigli Excess Policy").  JSUF ¶ 6.  The Zurich-Consigli Excess Policy states: "[t]here will be no right of action against us under this insurance unless: 1. You have complied with all the terms of this policy; and 2. The amount you owe has been determined by settlement with our consent or by actual trial and final judgment."  *Id.*; *see also* JSUF Ex. F.  It also incorporates the "terms and conditions of the underlying insurance [*i.e.*, the Zurich-Consigli Primary Policy] to the extent such terms and conditions are not inconsistent or do not conflict with" the terms and conditions in the Zurich-Consigli Excess Policy.  JSUF Ex. F. (Section I. Coverage).

7.      **The Catlin-99 Wall Primary Policy**.  Catlin Insurance Company, Inc. issued a primary liability policy to 99 Wall under policy number GLA-689942-0216, effective August 13, 2014 to August 13, 2016, with per occurrence limits of $2 million and aggregate limits of $4 million (the "Catlin-99 Wall Primary Policy").  JSUF ¶ 7.  The Catlin-99 Wall Primary Policy provides, in part, that Catlin "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies[,]" and "will have the right and duty to defend the insured against any 'suit' seeking those damages[,]" but includes a carve-out that states that Catlin "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  *Id.*; *see also* JSUF Ex. G.   Specifically, the policy includes a "Cross Claims or Cross Suits Exclusion" term which states that the policy "does not apply to any claim, demand, 'suit', legal action, or legal proceeding seeking damages or other relief that is brought

by, or on behalf of any Named Insured under this policy against any other Named Insured under this policy." JSUF Ex. G.

8. **The Starr-99 Wall Excess Policy**. Starr issued an excess liability policy to 99 Wall under policy number 1000015175, effective from August 13, 2014 to February 13, 2016 with per occurrence and aggregate limits of $5 million (the "Starr-99 Wall Excess Policy"). *Id*. ¶ 8. The Starr-99 Wall Excess Policy provides coverage in excess to the Catlin-99 Wall Primary Policy, and also provides, in pertinent part, that it follows the above-referenced Catlin terms, conditions and exclusions—including the exclusion for cross claims or cross suits. JSUF Ex. H.

## C. The Underlying Action and Partial Settlement

On November 16, 2017, 99 Wall initiated the underlying action against Nickel in the Supreme Court of the State of New York, County of New York under the Index No. 656973/2017. JSUF ¶ 12. On October 23, 2020 and September 9, 2021, 99 Wall amended its complaint in the underlying action to reflect Nickel's new name, Consigli, and to add Domestic and Hig as defendants. *Id*. ¶¶ 12–14.

The lawsuit alleges that on or about July 28, 2016, Hig drilled a hole in the elevator machine room on the roof of the Project, which was thereafter flooded by rainwater, causing 99 Wall to experience property and time element damages (the "first water event"). JSUF Ex. N. ¶¶ 13–15. The lawsuit further alleges that, on or about October 7, 2016, an electrical overfill switch for the water tank installed by Domestic failed, causing water to leak down 27 floors and causing 99 Wall to experience property and time element damages (the "second water event"). *Id*. ¶¶ 16–21. The Second Amended Complaint in the underlying action claims that the damages resulting from first and second water events were caused by Domestic, Hig, and Consigli's negligence. *Id*. ¶¶ 21, 36–71.

On September 13, 2022, 99 Wall, Hig, Domestic, and Harleysville entered into a partial settlement agreement regarding the underlying action.  JSUF ¶ 15; *see also* JSUF Ex. O (the "Partial Settlement").  The Partial Settlement did not release Consigli from all claims in the underlying action.  *See* Partial Settlement ¶¶ 3, 5.  Under the Partial Settlement, Harleysville paid a total of $3,500,000 on behalf of Hig for the two water events.  *Id*. at ¶ 2(a) ("[. . .] Harleysville shall, on behalf of itself, HIG, and Consigli, pay to 99 Wall the amount of $3,500,000, which amount shall be allocated $1,750,000 to the settlement of the First Water Event and $1,750,000 to the settlement of the Second Water Event.").

In connection with the Partial Settlement, 99 Wall, Hig, and Domestic entered into a Stipulation of Partial Dismissal in the underlying action (the "Stipulation") that states that "(1) all causes of action, claims, cross-claims, and counterclaims, as applicable, asserted by 99 Wall against HIG and Domestic, (2) all causes of action, claims, cross-claims, and counterclaims, as applicable, asserted by 99 Wall against Consigli for liability for property damage caused by the fault of Domestic and/or HIG, or otherwise arising out of HIG's work at the project located at 99 Wall Street, New York, NY (except as provided for below), and (3) all claims, cross-claims, and counterclaims, as applicable, asserted by HIG and Domestic against Plaintiff, be, and the same hereby are discontinued with prejudice, without costs to any party as against any of the other parties."  *See* Partial Settlement Ex. A.  The Stipulation expressly did not include, however, "the dismissal of 99 Wall's claims against Consigli for damages relating to the water event that occurred on or about October 6 and 7, 2016, to the extent such damages are caused by Consigli's own gross negligence, negligence, and/or breach of contract, but only to the extent caused by Consigli's own acts, omissions or fault (i.e., not caused by the acts, omissions or fault of Domestic and/or HIG)."  *Id*.

To date, the trial court in the underlying action has not rendered any rulings as to whether Hig, Domestic, or Consigli are liable for the water events and, if so, at what percentage of fault. However, on December 13, 2024, the New York Appellate Division, First Department, reversed the trial court's grant of summary judgment to Hig, granted summary judgment to Consigli on its breach of contract cross-claim for failure to procure insurance, and affirmed the denial of summary judgment to both Hig and Consigli on Consigli's contractual indemnification claim against Hig. *See 99 Wall Development Inc. v. Consigli & Associates, LLC, f/k/a T. G. Nickel & Associates, LLC*, Index No. 656973/2017, NYSCEF Doc. No. 893 (the "1st Dept. Order"). In so doing, the First Department held that, if Hig owes contractual indemnity to Consigli (which, again, has not yet been determined by the trial court), then the claim falls within the scope of coverage afforded to Consigli under the Harleysville-Hig Primary Policy's additional insured endorsement. *See* 1st Dept. Order at 2–3 (". . .HIG obtained insurance which limits liability to that 'which the additional insured [Consigli] is entitled to be indemnified by the "Named Insured" [HIG] pursuant to the "written contract [the HIG subcontract].'" Consigli has demonstrated that, because HIG obtained this non-conforming insurance, it was obligated to cover the cost of defending itself in this litigation until HIG's insurer ultimately took over its defense.").

## II.    PROCEDURAL HISTORY OF THIS CASE

On February 3, 2021, Harleysville initiated this action by complaint against Consigli, Domestic, Hig, Zurich, and 99 Wall. Dkt. No. 1. On March 5, 2021, Hig answered. Dkt. No. 20. On April 2, 2021, Consigli filed its answer and counterclaims against Harleysville. Dkt. No. 32. On April 12, 2021, 99 Wall filed its answer, along with (1) a crossclaim against Zurich; (2) a counterclaim against Harleysville; and (3) a third-party complaint against National Union. Dkt.

No. 39.  On April 23, 2021, Harleysville answered Consigli's counterclaims.  Dkt. No. 44.  On

April 28, 2021, Zurich answered the complaint, Dkt. No. 45, and the crossclaim by 99 Wall, Dkt.

No. 46.  On May 3, 2021, Harleysville answered 99 Wall's counterclaims.  Dkt. No. 47.

On July 20, 2021, National Union moved to dismiss 99 Wall's third-party complaint.

Dkt. No. 68.  On July 21, 2021, Judge Nathan, to whom this case was originally assigned,

directed 99 Wall to either amend its complaint or otherwise respond to the motion.  Dkt. No. 69.

On July 23, 2021, after holding an initial conference, the Court issued a case management plan

that provided for the completion of discovery on February 3, 2022.  Dkt. No. 71.  On August 10,

2021, 99 Wall filed the First Amended Third-Party Complaint, against National Union, seeking a

declaration that National Union is obligated to provide primary and non-contributory coverage to

Consigli and has no right to subrogate such obligations.  Dkt. No. 77 ("99 Wall FATC").  The 99

Wall FATC incorporated by reference 99 Wall's (1) crossclaim against Zurich, seeking a

declaration that Zurich should cover the claims against Consigli in the underlying action; and

(2) counterclaim against Harleysville, seeking a declaration that Harleysville is obligated to

provide primary and non-contributory coverage to Consigli and has no right to subrogate such

obligations.  *See id*.; Dkt. No. 39.

On August 17, 2021, Consigli moved to amend its answer to add a crossclaim and third-

party claim.  Dkt. Nos. 80–82.  On August 20, 2021, Harleysville filed the First Amended

Complaint against Consigli, Domestic, Hig, Zurich, 99 Wall, Catlin, and Starr.  Dkt. No. 83

("FAC").  The FAC sought, *inter alia*, (1) a declaration that Harleysville has no obligation to

defend or indemnify Consigli, Domestic, or Hig in the underlying action; (2) a declaration that,

to the extent Harleysville has an obligation to defend or indemnify Consigli in the underlying

action, Zurich, Catlin, and/or Starr also have such an obligation; (3) reimbursement from Zurich

and Catlin for costs expended on Consigli's behalf; and (4) reimbursement from 99 Wall for the

costs of defending Consigli, stemming from 99 Wall's alleged breach of contract in failing to

fulfill its contractual obligation to obtain general liability insurance for Consigli. *Id*. ¶¶ 30–105.

On August 23, 2021, National Union answered 99 Wall's FATC. Dkt. No. 85. On

August 24, 2021, Hig answered the FAC. Dkt. No. 91. On August 30, 2021, Consigli answered

the FAC and filed counterclaims against Harleysville, Dkt. No. 94, and 99 Wall answered the

FAC, Dkt. No. 95. On September 10, 2021, Zurich answered the FAC. Dkt. No. 97. On

September 13, 2021, Harleysville answered Consigli's counterclaims. Dkt. No. 99. On

September 27, 2021, Starr answered the FAC. Dkt. No. 100.

On October 4, 2021, Judge Nathan granted Consigli's motion to amend its answer to add

a crossclaim against Zurich and third-party claim against National Union, noting that no party

had opposed the motion. Dkt. No. 101. On October 7, 2021, Consigli answered the FAC and

filed (1) counterclaims against Harleysville, seeking a declaration that Harleysville has a duty to

defend, indemnify, and reimburse Consigli in the underlying action under insurance policies

issued by Harleysville to Hig and Domestic, alleging breach of contract, and seeking relief under

a promissory estoppel theory; (2) crossclaims against Zurich, seeking a declaration that, if

neither Harleysville nor National Union is found to be obligated to defend Consigli in the

underlying action, Zurich has a duty to defend and indemnify Consigli; and (3) a third-party

complaint against National Union, seeking a declaration that National Union has a duty to

indemnify Consigli in the underlying action in excess of the limits of the policy issued by

Harleysville to Hig. Dkt. No. 104.

On October 21, 2021, Harleysville answered Consigli's counterclaims. Dkt. No. 107.

On October 28, 2021, Zurich answered Consigli's crossclaims, Dkt. No. 108, and National

Union answered Consigli's third-party complaint, Dkt. No. 109.  On December 3, 2021, Judge

Nathan, pursuant to the parties' joint request, stayed all deadlines and discovery, except for

certain initial disclosures, as the parties engaged in private mediation.  Dkt. No. 114.  On April 4,

2022, after the parties reported that mediation had proven unsuccessful, the Court granted the

parties' request to extend the fact discovery deadline to August 31, 2022 and file a joint letter

regarding, *inter alia*, the need for expert discovery by September 1, 2022.  Dkt. No. 122.

On April 10, 2022, the case was reassigned to Judge Engelmayer, the District Judge

formerly assigned to this case.  On August 2, 2022, the Court granted the parties' request to

extend the fact discovery deadline to October 30, 2022 and directed the parties to file, by

October 31, 2022, a letter explaining whether expert discovery was needed and noting any

anticipated summary judgment motions.  Dkt. No. 124.  On September 16, 2022, after Consigli

raised a discovery dispute as to Harleysville's alleged failure to comply with its discovery

obligations, Dkt. No. 125, and Harleysville sought to extend the fact discovery deadline in light

of a partial settlement in the underlying action, Dkt. No. 127, the Court directed the parties to file

a joint status update as to settlement discussions and any outstanding discovery, Dkt. No. 130.

On October 17, 2022, after a subset of the parties filed a joint status report, Dkt. No. 131,

the Court held that any ruling on the parties' anticipated additional or amended claims would be

premature, Dkt. No. 132.  The Court set a schedule for the parties to move for leave to file

additional or amended claims.  Dkt. No. 132.

Between November 14, 2022, and January 11, 2023, the parties filed motions

for leave to amend, including: (1) Harleysville's motion for leave to file a second amended

complaint, Dkt. Nos. 135, 136; (2) Consigli's motion for leave to file a third amended answer

with counterclaims, crossclaims, and a third-party complaint, Dkt. Nos. 133, 134, and reply and

declaration in support of that motion, Dkt. Nos. 137, 153, 154; (3) Zurich's motion for leave to

file an amended answer with counterclaims, crossclaims, and a third-party complaint, Dkt. Nos.

138, 139, and reply and declaration in support of that motion, Dkt. Nos. 140, 159; (4)

Harleysville's opposition to Consigli's motion, Dkt. No. 149, and to Zurich's motion, Dkt. No.

151, and declaration in support, Dkt. No. 150; and (5) National Union's opposition to Zurich's

motion, Dkt. No. 147, and declaration in support, Dkt. No. 148.

On November 22, 2022, Harleysville sought leave to move for summary judgment.  Dkt.

No. 142.  Judge Engelmayer, noting that any summary judgment motion filed concurrently with

the motions for leave to amend would likely be premature and fail to account for all then-

pending claims, directed Consigli and other implicated parties to respond.  Dkt. No. 143.  On

December 19, 2022, National Union, joining in Harleysville's request, requested leave to move

for summary judgment as to Consigli's third-party claim against it.  Dkt. No. 146.  On January 9,

2023, Consigli opposed Harleysville and National Union's requests.  Dkt. Nos. 156, 157.  On

January 11, 2023, Zurich opposed Harleysville and National Union's requests. Dkt. No. 161.

On July 21, 2023, Judge Engelmayer issued an Opinion and Order granting Harleysville

and Consigli's motions for leave to amend their respective pleadings, granting Zurich's motion

for leave to amend with respect to its proposed third-party complaint against National Union and

crossclaim against Consigli, and denying Zurich's motion with respect to its proposed

counterclaim against Harleysville.  Dkt. No. 169.  Harleysville filed the Second Amended

Complaint, the operative complaint in this action, on July 27, 2023.  Dkt. No. 171 ("SAC").  On

July 28, 2023, Zurich filed its Amended Answer with Crossclaim and Third-Party Complaint,

Dkt. No. 174, and Consigli filed its Third Amended Answer with Counterclaims, Crossclaim,

and Third-Party Complaint, Dkt. No. 175.  On August 10, 2023, National Union answered

Zurich's Third-Party Complaint and Consigli's Third-Party Complaint, Dkt. Nos. 181, 182,

Zurich answered Consigli's crossclaim and Harleysville's SAC, Dkt. Nos. 183 and 184, Consigli

filed its Amended Answer to Harleysville's SAC, with Counterclaims, Crossclaim, and Third-

Party Complaint and its Answer to Zurich's crossclaim, Dkt. Nos. 186, 187, and Starr filed its

Answer to Harleysville's SAC, Dkt. No. 188.

On October 31, 2023, Consigli moved to stay all proceedings pending the resolution of

the underlying action. Dkt. No. 205. On November 7, 2023, Harleysville opposed. Dkt. No.

210. Zurich opposed on November 10, 2023. Dkt. No. 212. Consigli filed its reply brief on

November 20, 2023, Dkt. No. 216, and Judge Engelmayer scheduled oral argument on the

motion for December 21, 2023, Dkt. No. 219. On December 20, 2023, the Court issued an order

on the motions: (1) staying discovery on the bad faith counterclaims brought by Consigli,

pending resolution of the underlying action; (2) ordering that fact discovery on all other claims

proceed and be completed by January 30, 2024; (3) adjourning the December 21, 2023

conference, and instead ordering the parties to meet and confer at that time; (4) and scheduling a

conference for February 21, 2024. Dkt. No. 220. Judge Engelmayer later granted an extension

of discovery, adjourning the deadline to February 16, 2024, and likewise adjourning the pre-

motion conference to March 20, 2024. Dkt. No. 223. Catlin appeared and filed its Answer to

Harleysville's SAC on February 15, 2024. Dkt. No. 226.

On February 20, 2024, this case was reassigned to the undersigned, and on February 26,

2024, the Court issued a Notice of Reassignment informing the parties that all prior orders, dates,

and deadlines remained in effect, including the pre-motion conference scheduled for March 20,

2024. Dkt. No. 228. On March 20, 2024, the Court held a pre-motion conference and

subsequently set a briefing schedule for the motions for summary judgment. Dkt. No. 242.

Opening motions were filed on April 19, 2024 by Zurich (*see* Dkt. Nos. 243, 244, 245), National Union (*see* Dkt. No. 271)[3], Starr (*see* Dkt. No. 254), Harleysville (*see* Dkt. No. 267), and Catlin (*see* Dkt. No. 275).[4]  Harleysville simultaneously moved for default judgment against Hig and Domestic.  Dkt. No. 252.  On July 2, 2024, Consigli moved to strike the declaration of Jeffrey A. Beer Jr., Esq., which was filed in support of Harleysville's motion for summary judgment.  Dkt. No. 287.  The same day, National Union opposed Zurich's motion for summary judgment, Dkt. No. 285, Catlin opposed Harleysville's motion for summary judgment, Dkt. No. 286, Consigli opposed Harleysville's, National Union's, and Zurich's motions for summary judgment, Dkt. No. 289, Zurich opposed Harleysville's and National Union's motions for summary judgment, Dkt. No. 290, Harleysville opposed Zurich's, Starr's, and Catlin's motions for summary judgment, Dkt. No. 309, and Starr opposed Harleysville's motion for summary judgment, Dkt. No. 311.  The parties filed their respective replies in further support of their motions on July 26, 2024 and August 23, 2024, *see* Dkt. Nos. 318, 323–326, 330, and Consigli filed its reply in further support of its motion to strike the Beer Declaration on August 27, 2024.  Dkt. No. 330.

On November 12, 2024, Harleysville filed a letter requesting that "the Court grant the unopposed motion for default judgment against Domestic and Hig."  Dkt. No. 331.  The Court subsequently issued an order clarifying the procedural history relating to Harleysville's request and noting that Harleysville did not address "any risks of inconsistent judgment associated with granting the default judgment motion," and setting a deadline for any other parties to respond to

---

[3] National Union originally moved for summary judgment on April 19, 2024, but later filed an amended notice of motion and briefing on April 22, 2024 to correct filing deficiencies in its original submissions.  *See* Dkt. Nos. 247, 271.

[4] Like National Union, Catlin originally moved for summary judgment on April 19, 2024, but subsequently filed amended briefing on April 23, 2024 to correct filing deficiencies in its original submissions.  *See* Dkt. Nos. 251, 275.

Harleysville's request.  Dkt. No. 332.  On November 15, 2024, Starr objected to Harleysville's request "based on the potential downstream effect that such a decision might then be used by Harleysville to argue technical grounds to avoid coverage for Consigli[.]"  Dkt. No. 333.  Zurich also filed a letter objecting to Harleysville's request because the issues raised by the default motions are "inextricably intertwined" and resolving the default motions prior to the motions for summary judgment "potentially risk[s] inconsistent judgments."  Dkt. No. 335.  Harleysville submitted a subsequent letter stating that no risk of inconsistent verdicts would result from resolving the default motions separately, and on the contrary, "Harleysville requests an expedited decision on the unopposed default judgment motion only to avoid irreparable harm [to Harleysville]."  Dkt. No. 336.

On January 21, 2025, the Court requested that the parties "submit status reports regarding the underlying action, and whether and how any recent developments in the action are pertinent to the motions pending before the Court, including but not limited to the December 13, 2024 opinion by the First Department modifying the summary judgment decision in the underlying action."  Dkt. No. 337.  The parties submitted their respective reports on January 24, 2025.  Dkt. Nos. 338–343.  In particular, the parties notified the Court that a settlement conference was scheduled to be held in the underlying action on February 19, 2025, *see e.g.*, Dkt. No. 338, and Zurich, Consigli, Harleysville each provided their respective positions on the significance of the December 13, 2024 decision from the First Department on the pending motions for summary judgment, *see* Dkt. Nos. 339, 340, 342.  Consigli subsequently moved for leave to respond to Harleysville's status report to address "why neither judicial estoppel nor collateral estoppel applies," *see* Dkt. No. 344, which the Court granted, *see* Dkt. No. 345.  Consigli filed its response on January 31, 2025.  Dkt. No. 346.  This Opinion and Order followed.

## DISCUSSION

### I.    APPLICABLE LEGAL STANDARDS

#### A.  Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it

"might affect the outcome of the suit under the governing law," and is genuinely in dispute "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"It is the movant's burden to show that no genuine factual dispute exists" and a court

"must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor."  *Vt.*

*Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant

has met its burden, "its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts" and, toward that end, "must come forward with

specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal references omitted).  The nonmoving

party may not rely on "mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.

1986).

#### B.  Interpretation of Insurance Contracts

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to

principles of contract interpretation."  *Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435

(S.D.N.Y. 2009) (quoting *In re Ests. of Covert*, 97 N.Y.2d 68, 76 (2001) (internal references

omitted)).  Under New York law,[5] the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted); *see also Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (internal references omitted)).

"As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning[.]" *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 31 N.Y.3d 131, 135 (2018) (quoting *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008) (internal quotation marks omitted)).  "If the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 570 (2002) (internal references omitted)).  "If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer." *Id.*

### C.  The Duty to Defend

"The duties to defend and indemnify are separate and distinct; the former is a form of litigation insurance for the insured." *Barney Greengrass, Inc. v. Lumbermens Mut. Cas. Co.*, 445 F. App'x 411, 413 (2d Cir. 2011) (summary order) (internal references omitted).  Under New York law, "the duty of an insurer to defend its insured is 'exceedingly broad' and far more expansive than the duty to indemnify its insured." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993)); *accord Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d

---

[5] No party disputes that New York law governs the Court's analysis.

34, 37 (2010).  "[T]he insurer's duty to provide a defense is invoked 'whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be.'"  *High Point Design, LLC*, 911 F.3d at 95 (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)).  Thus, "the general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy."  *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004).  An insurer must defend even if "facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered[.]"  *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 427 (2d Cir. 2002) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991) (internal quotation marks omitted)).  "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend."  *High Point Design, LLC*, 911 F.3d at 95 (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).  In assessing the duty to defend, the allegations in the underlying complaint must be "liberally construed."  *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014).

New York law further provides that in some circumstances, the duty to defend "can be triggered when the insurer has knowledge of facts [that] are extrinsic to the complaint" that establish a reasonable possibility of coverage, and "that is so even if the extrinsic facts post-date the tender."  *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 404 (S.D.N.Y. 2021) (internal references omitted), *reconsidered on other grounds*, 556 F. Supp. 3d 301 (S.D.N.Y. 2021); *see also Fitzpatrick*, 78 N.Y.2d at 67.

That said, "[t]he insurer's duty to defend is ... not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy."

22

*Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 37 N.Y.2d 69, 74 (1975).  In other words, where an insurer's duty to defend turns on an unresolved factual dispute, "the duty to defend lasts only until the factual ambiguity is resolved in favor of the insurer."  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 622 (2d Cir. 2001); *see also Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1425 (S.D.N.Y. 1991) (The "duty to defend continues until judicial determination, either in [the] underlying action or in [the] coverage action, of [the] issue relevant to coverage." (citing *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 10 (1985))).

## II.    THE MOTIONS FOR SUMMARY JUDGMENT

The central question to be resolved by the seven separate summary judgment motions before the Court is which insurer or insurers owes a duty to defend and indemnify, or must contribute to the defense of, Consigli in the underlying action.  Because each motion revolves around the same parties, insurance policies, and underlying facts, rather than address each motion separately, in the following sections the Court addresses the pertinent issues relevant to the disposition of all the motions for summary judgment at once.  For the reasons discussed below, the Court concludes that: *first*, Harleysville owes a continuing duty to defend Consigli in the underlying action and is not relieved of that duty by the Partial Settlement (or otherwise); *second*, National Union, whose policy is excess to the Harleysville-Hig Primary Policy, potentially owes coverage to Consigli for the underlying action depending on the eventual liability determinations; and *third*, for independent reasons, neither Catlin, Starr, nor Zurich are obligated to contribute to Harleysville's continuing defense of Consigli in the underlying action.

### A. Harleysville Owes a Continuing Duty to Defend Consigli on a Primary and Non-Contributory Basis and Cannot be Relieved of That Duty

#### 1. Harleysville Owes a Continuing Duty to Defend

Under the clear and unambiguous provisions of the Harleysville-Hig and Harleysville-Domestic Policies, under which Consigli is an additional insured, Harleysville is required to defend Consigli on a primary and non-contributory basis in the underlying action if the damages are allegedly "caused, in whole or in part, by the acts or omissions" of Hig and/or Domestic. JSUF Exs. A, C. Simply put, if Hig or Domestic are the proximate cause of the damages alleged in the underlying action, Harleysville has a duty to defend Consigli. *See id.*; *see also Burlington Ins. Co. v. NYC Tr. Auth.*, 29 N.Y.3d 313, 321 (2017).

The complaints in the underlying action, including the operative Second Amended Complaint filed in 2021, include numerous allegations that Domestic and Hig were the proximate causes of the damages resulting from the first and second water events. For example, 99 Wall alleges that Hig, "who was a subcontractor to [Consigli], drilled a hole in the elevator machine room, which is located on the roof [ . . . and] the elevator controllers were flooded by rain that penetrated the roof through the hole drilled by the electrician, HIG." JSUF Ex. N. ¶¶ 13–14. 99 Wall also alleges that Domestic "failed to properly provide and install a water tank [ . . . and] the water tank failed and water leaked down 27 floors to the sub-basement. Every floor suffered extensive water damage, requiring the removal and replacement of completed work, resulting in further significant delay to the Project." *Id.* ¶¶ 17–20.

Aside from these examples, the Second Amended Complaint is replete with allegations that clearly and unambiguously name Hig and Domestic as the causes of the damages suffered by 99 Wall. *See id.* ¶¶ 38–41, 47–50, 56, 66–67. There is, thus, at the very least a possibility that Consigli's liability to 99 Wall could be attributed to Hig and Domestic, at least in part, and

thus Harleysville owes a continuing duty to defend. *See Frontier Insulation Contrs. v. Merchant Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (Ct. App. 1997) (if an insurer has a duty to defend a single claim the complaint presents, it must defend the entire action); *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 102 A.D.3d 756, 758, 959 N.Y.S.2d 204 (2d Dep't 2013) (an insurer may be required to defend even though it may not be required to pay once the litigation has run its course).

Indeed, it is undisputed that Harleysville recognized it had a duty to defend Consigli in the underlying action in 2020 and has since been acting consistent with that recognition. *See* JSUF Ex. S (Harleysville Tender Acceptance and Reservation of Rights).[6] When an insurer "has actual knowledge of facts establishing a reasonable possibility of coverage," it has a duty to defend. *Fitzpatrick*, 78 N.Y.2d at 67. Furthermore, once an insurer is determined to owe its insured a duty to defend, it cannot be relieved of that duty until "judicial determination, either in [the] underlying action or in [the] coverage action, of [the] issue relevant to coverage." *Avondale Indus., Inc*, 774 F. Supp. at 1425; *see also Fed. Ins. Co. v. Cablevision Sys. Dev. Co.*, 836 F.2d 54, 57 (2d Cir. 1987) (the duty to defend continues until either (1) there has been a judgment; or (2) the insured agrees that the insurer is relieved of its duty to defend); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) ("An insurer is relieved of the duty to defend only if there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." (internal references omitted)).

---

[6] It is also undisputed that Harleysville has already paid a substantial settlement on behalf of Hig for both water events, a tacit acknowledgment of the potential that Hig was a contributing cause of the water events. *See* JSUF Ex. O. As discussed below, whether that settlement is enforceable is still to be resolved.

On the record before the Court, it cannot be concluded as a matter of law that "there is no possible factual or legal basis" on which Harleysville will be obligated to indemnify Consigli.  In fact, the underlying action is continuing to this day and it is undisputed between the parties that no liability determinations—whether at trial or on summary judgment—have been concluded. Indeed, no judgment has been rendered at all.  Until that occurs, Harleysville must continue to defend Consigli because there still exists a "reasonable possibility" that Consigli may be found liable for damages alleged by 99 Wall which were "caused, in whole or in part," by the acts or omissions of Hig and/or Domestic.

### 2. Harleysville's Arguments Disclaiming Coverage are Unavailing

In its affirmative motion for summary judgment, Harleysville provides three main arguments in support of its position that it never had a duty to defend, and does not now have a continuing duty to defend, Consigli in the underlying action.  First, Harleysville claims it owes no duty because 99 Wall is suing Consigli for damages caused to its own work and for its failure to timely complete the Project, both of which Harleysville claims are not covered by the Harleysville Policies because, under New York law, general liability policies do not insure against faulty workmanship.  *See* Harleysville Mot. at 10–16 (discussing *George A. Fuller Co. v. United States Fid & Guar. Co.*, 613 N.Y.S.2d 152, 155 (1st Dept. 1994) and progeny).  Second, Harleysville claims coverage for the underlying action is excluded by "exclusion b." and "exclusion j." under the Harleysville Policies, which Harleysville refers to as "business risk exclusions" that "ensur[e] that a liability insurer does not become a surety for an insured's contractual obligations."  *Id*. at 17–20.  Third, Harleysville asserts that coverage for Consigli is barred because it was prejudiced by the timing of Consigli's notice of the two water events.  The Court finds all three of these arguments unavailing.

26

i.    **The Claims Against Consigli May Constitute an Occurrence**

As to Harleysville's first argument, there remains a genuine dispute of material fact as to whether the two water events constituted "faulty workmanship" or "accidents" that precludes summary judgment in Harleysville's favor. This distinction is relevant to Harleysville's argument disclaiming coverage under the Harleysville Policies because the Harleysville Policies cover "damages because of . . . 'property damage' . . . caused by an '*occurrence*.'" JSUF Exs. A, C (emphasis added). The Harleysville Policies in turn define "occurrence" as "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions." JSUF Exs. A, C (emphasis added).

Harleysville contends that the two water events were not accidents (and thus, not covered occurrences) but rather the result of "faulty workmanship," which Harleysville claims cannot be the subject of coverage if the faulty workmanship results in damages to the insured's work product. *See* Harleysville Mot. at 10; *see also George A. Fuller Co.*, 613 N.Y.S.2d at 155. As discussed, the trial court has not rendered any conclusions regarding the relative fault, liability, or apportionment of damages relating to the water events in the underlying action. It is premature, therefore, for this Court to determine whether the water events were "accidents" or "faulty workmanship" as those terms are defined and used in the Harleysville Policies or under New York law, respectively.

Furthermore and regardless, where "faulty workmanship . . . creates a legal liability by causing bodily injury or property damages to something other than the insured's work product," there *can* be a covered "occurrence." *George A. Fuller Co.*, 613 N.Y.S.2d at 155. The allegations in the Second Amended Complaint in the underlying action allege damages not just to the work product of Consigli, but also the structure of the existing building and to the overall timing of the Project. See JSUF Ex. L ¶¶ 4, 17–18; JSUF Ex. N. ¶ 71 (alleging Consigli's

negligence caused damage to "[99 Wall's] real and personal property, *separate and distinct from Consigli & Assoc.'s own work.*") (emphasis added); *see also* JSUF Exs. A & C (Harleysville Policies defining "property damage" to include "loss of use"). Thus, on the record before the Court, the Court cannot conclude as a matter of summary judgment that Harleysville owes no duty to defend Consigli on this basis.

### ii.    No Exclusions in the Harleysville Policies Bar Coverage

Second, the exclusion provisions identified by Harleysville do not absolve it of its coverage obligations. "[T]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006) (quoting <u>Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York</u>, 671 N.Y.S.2d 66, 69 (1998). The insurer bears the heavy burden of demonstrating that the exclusion applies, and any ambiguity must be interpreted in favor of coverage. *Id.* Harleysville identifies three categories of exclusions that it purports applies to bar coverage for the underlying action entirely: (1) the "Damage to Property Exclusions," which are j(5) and j(6) in the Harleysville Policies (*see* JSUF Ex. A at 44, Ex. C at 42); (2) the "Contractual Liability Exclusions," which is Exclusion b. in the Harleysville Policies (*see* JSUF Ex. A at 41, Ex. C at 39); the "Wrap-Up Exclusion," which is only in the Harleysville-Hig Policy (*see* JSUF Ex. C at 88). None bar coverage as a matter of law.

The Damage to Property Exclusions bar coverage for liability for property damage to: "(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or (6) That particular part of any property that must be restored,

repaired or replaced because 'your work' was incorrectly performed on it." JSUF Ex. A at 44, Ex. C at 42. But "You," in turn, is defined under the Harleysville Policies to mean only the Named Insureds, Domestic and Hig, respectively, and not Consigli, which is an Additional Insured. JSUF Ex. A at 40, Ex. C at 38. Thus, by the plain terms of the Harleysville Policies, the Damage to Property Exclusion cannot apply to property damage allegedly caused by Consigli.[7]

Likewise, the Contractual Liability Exclusions, which Harleysville argues exclude all coverage for breach of contract claims, do not apply. The Contractual Liability Exclusions state only that the Harleysville Policies do not apply to "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement[,]" and clarified that "[t]his exclusion does not apply to liability for damages: (1) That the insured would have in the absence of the contract or agreement . . .." JSUF Ex. A at 41, Ex. C at 39. By its plain terms, this exclusion does not mean that Harleysville does not owe a duty to defend Consigli if it faces any breach of contract claims; rather, the provision only excludes Harleysville's obligation to cover claims that are already covered through a policyholder's separate, third-party agreement to assume the liability for certain damages. No such agreement exists in this action. Further, the Contractual Liability Exclusion includes an express caveat (subpoint (1)) that it does not apply to claims that the insured would

---

[7] Even if it did apply, it appears to be undisputed that the "particular part(s)" of the project on which Hig and Domestic were performing operations was the electrical and plumbing systems, respectively. Even where the Named Insured is the general contractor on a new construction project, courts have held that the "particular part" of the property on which it is performing operations is *not* the entire project. *See, e.g.*, *C. O. Falter, Inc.* v. *Crum & Forster Ins. Companies*, 361 N.Y.S.2d 968, 975 (1974). Accordingly, the exclusion would not bar coverage for property damage to parts of the building other than those electrical and plumbing systems.

face in absence of a third-party agreement, like claims asserting damages for negligence. The underlying action, which includes negligence claims, is exactly such a case. *See Lumbermens Mutual Cas. Co*. v. *Town of Pound Ridge*, 362 F.2d 430, 434 (2d Cir. 1966).

The Wrap-Up Exclusion, which is only included in the Harleysville-Hig Primary Policy, excludes coverage for property damage arising out of operations "when a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved." JSUF Ex. C at 88. Harleysville contends that this exclusion applies by virtue of the Catlin-99 Wall Primary Policy, which it claims is a "general liability insurance" that adds Consigli as a Named Insured under its terms. *See* JSUF Ex. I. But Harleysville, as the party attempting to enforce an exclusion provision, "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Parks Real Estate Purchasing Grp.,* 472 F.3d at 42. Harleysville has not shown that the Catlin-99 Wall Primary Policy, as it did not include the subcontractors as Named Insureds, was unambiguously a "consolidated (wrap-up) insurance program," as that term is commonly understood in the insurance industry.[8] *See Thompson* v. *National Union Fire Ins. Co*., 249 F. Supp. 3d 606, 608– 610 (D. Conn. 2017) (undefined term "wrap-up" is ambiguous and exclusion does not bar coverage). Since Harleysville has not met its burden, Harleysville cannot disclaim its duty to defend Consigli on the basis of the Wrap-Up Exclusion.

---

[8] Indeed, the parties opposing Harleysville's motion strongly dispute that the Catlin-99 Wall Primary Policy would qualify as a consolidated wrap-up insurance policy, as those typically cover at least all subcontractors to a project, and often cover all parties working on or relating to a project. *See, e.g.*, Consigli Opp. at 27 (citing industry definitions for consolidated wrap-up policies).

### iii.    Harleysville Waived its Defense of Untimely Notice

Third, as a matter of law, Harleysville waived its right to assert an affirmative defense to coverage of untimely notice.  In its October 1, 2020 letter to Consigli, Harleysville acknowledged that the occurrences occurred in 2016 and that the date of Harleysville's tender was January 23, 2018, but did not reserve its relevant rights.  *See* JSUF Ex. S.  The Second Circuit and district courts in this Circuit have held that such circumstances can be insufficient to preserve a late notice defense, and rather, justify a finding of waiver of such a defense.  *See, e.g.*, *State of N.Y.* v. *AMRO Realty Corp*., 936 F.2d 1420, 1430–33 (2d Cir. 1991); *TIG Ins. Co.* v. *Town of Cheektowaga*, 142 F. Supp. 2d 343, 365–67 (W.D.N.Y. 2000); *Olin Corp.* v. *Ins. Com. of N. Am.*, 2006 WL 509779 at *4 (S.D.N.Y. Mar. 2, 2006).  Thus, Harleysville, having agreed to defend Consigli in 2020 without reserving its rights to untimely notice defense, cannot now argue Consigli's notice prejudiced it and relieved it of its obligations under the contract.

### 3.    The Partial Settlement Does Not Absolve Harleysville of its Continuing Duty to Defend

Finally, the Court also finds unpersuasive Harleysville's position that the Partial Settlement absolves it of its continuing duty to defend Consigli in the underlying action as a matter of summary judgment.  Foremost, there remains a disputed issue of material fact as to the enforceability of the Partial Settlement.  Consigli's counterclaims allege that the Partial Settlement is a result of bad faith and is, therefore, unenforceable and void.  *See* Dkt. No. 175 ¶¶ 122–25, 133–35.  As it is undisputed that these counterclaims—and the factual allegations underpinning them—remain stayed (so as not to prejudice proceedings in the underlying action) and thus have not been resolved, the Court does not need to analyze this issue further other than to note that it remains undetermined, involves disputes of material fact, and thus precludes summary judgment in favor of Harleysville on this matter.

Furthermore, the Partial Settlement and accompanying Stipulation were only entered into between Harleysville, 99 Wall, Hig, and Domestic, and expressly reserve claims by 99 Wall against Consigli for its own negligence relating to the second water event. *See* Partial Settlement ¶ 5 & Ex. A ("[T]his stipulation does not include the dismissal of 99 Wall's claims against Consigli for damages relating to the water event that occurred on or about October 6 and 7, 2016, to the extent such damages are caused by Consigli's own gross negligence, negligence, and/or breach of contract, but only to the extent caused by Consigli's own acts, omissions or fault (i.e., not caused by the acts, omissions or fault of Domestic and/or HIG)."). On summary judgment, Zurich contends that this language does not change the underlying court's ability to find that the two water events were "caused, in whole or in part" by Hig and/or Domestic acts or omissions, and thus does not relieve Harleysville of its continuing duty to defend. *See* Zurich Mot. at 17–18. Because, as discussed, there remains unresolved the threshold question of whether the Partial Settlement is even enforceable, the Court declines at this stage to rule on whether the scope of the language of the Partial Settlement and the Stipulation would potentially extinguish Harleysville's duty to defend Consigli; it is enough that, on the current record, Harleysville cannot prevail on summary judgment.

### B. National Union Potentially Owes Coverage to Consigli

For the reasons discussed above, Harleysville owes a continuing duty to defend and potentially indemnify Consigli in the underlying action. The National Union-Hig Excess Policy is excess to the Harleysville-Hig Primary Policy and, by its express terms, follows the "terms, definitions, conditions and exclusion of Scheduled Underlying Insurance," (the Harleysville-Hig Primary Policy) "subject to the Policy Period, Limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy." *See* JSUF Ex. D. Therefore, because the Harleysville-Hig Primary Policy may eventually be exhausted, thereby triggering the National

Union-Hig Excess Policy, National Union is not entitled to summary judgment on the basis that its coverage cannot be triggered. [9]

### C. Harleysville is Not Entitled to Contribution from Catlin, Starr, or Zurich

In the alternative, Harleysville requests the Court rule on summary judgment that, if Harleysville owes a continuing duty to defend Consigli in the underlying action, Harleysville is entitled to contribution from Consigli's other insurers. *See* Harleysville Mot. at 34–36. Specifically, Harleysville claims that Catlin owes a duty to defend and indemnify Consigli under the terms of the Catlin-99 Wall Primary Policy and must reimburse Harleysville for one third of the costs incurred defending Consigli up to the time of the Partial Settlement, plus interest. *Id*. at 36. Harleysville also argues Zurich owes reimbursement to Harleysville for costs expended in defending Consigli since September 13, 2022, plus interest, for reasons of equity and unjust enrichment. *Id*. at 36–38. Although Harleysville does not appear to affirmatively move for summary judgment with respect to Starr's respective liability, Harleysville opposes Starr's motion which requests this Court declare that Starr has no liability to contribute to Consigli's defense in the underlying action. *See* Starr Mot. at 25. For the reasons discussed below, the Court concurs with Catlin, Starr, and Zurich's positions and disagrees with Harleysville.

### 1. The Catlin and Starr Policies Expressly Bar Coverage for the Claims Asserted Against Consigli in the Underlying Action

The Catlin-99 Wall Primary Policy contains an express "Cross Claims or Cross Suits Exclusion" which states that "[t]his insurance does not apply to any claim, demand, "suit", legal

---

[9] National Union's motion for summary judgment incorporates the same arguments as Harleysville's with respect to its position that it owes no duty to defend Consigli in the underlying action. *See* National Union Mot. at 8–12 (arguing that claims do not constitute an "occurrence"); *id*. at 12–15 (arguing remaining claims are not covered because Partial Settlement negates all claims except those for Consigli's own conduct, and thus Consigli does not count as an Additional Insured under the policy); *id*. at 15–17 (arguing policy exclusions bar coverage). Thus, for the same reasons as those stated with respect to the same arguments made by Harleysville, National Union is not entitled to summary judgment.

action, or legal proceeding seeking damages or other relief that is brought by, or on behalf of any

Named Insured under this policy against any other Named Insured under this policy." *See* JSUF

Ex. G. at 46. As discussed, the underlying action is brought by 99 Wall against Consigli, both of

which are Named Insureds under the Catlin-99 Wall Primary Policy. *See* JSUF Ex. G. Thus, per

the plain, clear, and unambiguous terms of the Catlin-99 Wall Primary Policy, the claims

asserted in the underlying action are expressly excluded from coverage. *Cardinal v. Long Island*

*Power Authority*, 309 F. Supp. 2d 376, 391 (E.D.N.Y. 2004) (an insurer can negate coverage by

virtue of an exclusion if such "exclusion is stated in clear and unmistakable language, is subject

to no other reasonable interpretation, and applies to the particular case") (citing *Belt Painting*

*Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (N.Y. 2003); *see also 385 Third Ave. Assocs., L.P. v.*

*Metro. Metals Corp.*, 81 A.D.3d 475, 476 (1st Dep't 2011) (cross liability exclusion

unambiguous); *DRK, LLC v. Burlington Ins. Co.*, 74 A.D.3d 693, 694 (1st Dep't 2010) (cross

liability exclusion unambiguous); *Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, 906 F. Supp.

2d 80, 93 (E.D.N.Y. 2012) ("insured versus insured" exclusion unambiguous). Furthermore, the

Starr-99 Wall Excess Policy (which is excess to the Catlin-99 Wall Primary Policy) follows from

the Catlin primary policy with respect to both its Named Insureds and exclusion endorsements.

*See* JSUF Ex. H. Accordingly, Starr likewise owes no coverage to Consigli in the underlying

action on the basis of this same exclusion provision.

On opposition, Harleysville does not dispute that the Cross Claims or Cross Suits

Exclusion in the Catlin-99 Wall Primary Policy is enforceable and excludes coverage for any and

all claims asserted by 99 Wall against Consigli in the underlying action, but merely states that

Catlin must nevertheless contribute to Consigli's defense in the underlying action solely by

virtue of the (voluntarily dismissed) cross-claims asserted in the underlying action against

Consigli by Domestic and Hig who are not Named Insureds under the Catlin-99 Wall Primary Policy. *See* Harleysville Opp. at 21. But the settled intra-Defendant cross-claims are of no moment, because Harleysville's duty to defend is primary and non-contributory, and thus neither Catlin nor Starr (neither of whom have tendered a defense to Consigli or previously acknowledged any duty to defend, unlike Harleysville) must reimburse Harleysville for its defense. As discussed, by virtue of its subcontract with Hig, Consigli is an Additional Insured under the Harleysville-Hig Primary Policy on a primary and non-contributory basis. *See* JSUF ¶ 11. Accordingly, Harleysville has the primary obligation to defend Consigli in the underlying action, just as it originally recognized in 2020, and is not entitled to contribution from Catlin or Starr.

### 2. The Zurich Policy's Condition Precedent of Timely Notice Was Not Satisfied

New York law is notoriously strict about the enforcement of conditions precedent to contracts and, in particular, to notice provisions of insurance policies. *See, e.g.*, *Unigard Sec. Ins. Co. v. North River Ins. Co.*, 584 N.Y.S.2d 290, 292 (1992); *Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987) (stating that under New York law, compliance with a notice of occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy); *Am. Ins. Co. v. Fairchild Indus.*, 56 F.3d 435, 438 (2d. Cir. 1995) (same). The Zurich-Consigli Primary Policy contains, in relevant part, specific conditions (called "Duties In The Event Of Occurrence, Offense, Claim Or Suit") that require Consigli to notify Zurich "as soon as practicable of an 'occurrence' . . . which may result in a claim," and to notify Zurich, by written notice, "as soon as practicable,[,]" "[i]f a claim is made or 'suit' is brought against any insured[.]" *See* JSUF Ex. E. It also includes endorsements (specifically, the Contractors Liability Supplemental Coverages and Conditions endorsement and

a New York Changes – Commercial General Liability Coverage Form endorsement) that modify the notice conditions to make clear that such failure to give notice "shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us.  However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter." *Id*. at 68.  Furthermore, the Zurich-Consigli Primary and Excess Policies also each contain "Legal Action Against Us" conditions providing that Zurich cannot be sued unless the terms have been fully complied with.  *Id*. at 26 ("…No person or organization has a right under [the CGL Coverage Part]: … To sue us on this Coverage Part unless all of its terms have been fully complied with."); JSUF Ex. F at 200 ("There will be no right of action against us under this insurance unless: 1. You have complied with all the terms of this policy; and 2. The amount you owe has been determined by settlement with our consent or by actual trial and final judgment.").  Altogether, these conditions make clear that claims against Zurich cannot be maintained if Zurich was not given timely notice by the insured and such failure to provide reasonable and timely notice prejudiced Zurich.

It is undisputed that Zurich was not notified of any "occurrence" or "suit" until January 13, 2021, which was *more than four years* after the first water event and *over three years* after the initiation of the underlying action, both of which are events that unambiguously require notice to Zurich "as soon as practicable" under the clear conditions of the Zurich-Consigli Primary and Excess Policies.  JSUF ¶ 33–34; JSUF Ex. Z.  Purely as a matter of New York law, such a lengthy delay is both unreasonable and untimely.  *See Tower Ins. Co. of New York v. Classon Heights, LLC*, 920 N.Y.S.2d 58, 61 (1st Dep't 2011) (holding five month delay

unreasonable where liability policy required notice of occurrence be given "as soon as practicable" and collecting cases). Indeed, under New York law, after two years of delay (only approximately half of the delay that undisputably occurred here), it is the insured's burden to establish that the insurer was not prejudiced. *See* N.Y. Ins. Law § 3420 (c)(2)(A) ("the burden of proof shall be on: . . . (ii) the insured, injured person or other claimant to prove that the insurer has not been prejudiced, if the notice was provided more than two years after the time required under the policy."). And an insurer is deemed to have been prejudiced by delay to provide notice where is has "materially impair[ed] the ability of the insurer to investigate or defend the claim." *Id*. § 3420(c)(2)(C).

On the record before the Court, there is no genuine dispute of material fact as to the prejudice suffered by Zurich as a result of Consigli's failure to provide timely notice. As there was a more than two-year delay in notice provided to Zurich, the insurer or other claimant (in this instance, Harleysville and Consigli) have the burden of producing evidence to rebut the presumption. In opposing Zurich's motion, they did not do so. And on the contrary, Zurich has put forward unrebutted testimony that if Zurich had received timely notice, it would have (1) retained counsel to represent Consigli in 2017; (2) pursued additional coverage for Consigli; and (3) taken steps to mitigate any potential conflicts of interest caused by Harleysville controlling the defense for multiple parties in the underlying action. *See* Zurich 56.1 ¶ 54; Zurich Mot. at 35–39; *see also Am. Ins. Co.*, 56 F.3d at 440–41 (2d. Cir. 1995) ("An insurer cannot be expected to show precisely what the outcome would have been had timely notice been given. This uncertainty, however, is the result of the failure of the insured to comply with the policy, and it should not be permitted to use that uncertainty as a weapon against the insurer.").

Thus, both the legal presumption that Zurich is entitled to and the record before the Court require the Court to find that the lack of timely notice prejudiced Zurich.

For these foregoing reasons, to the extent that Zurich may have owed duties to indemnify or defend Consigli in the underlying action pursuant to the terms of the Zurich-Consigli Primary or Excess Policies, those duties are invalidated due to the failure of Consigli to satisfy the condition precedent of timely notice.[10]

## III.    CONSIGLI'S MOTION TO STRIKE

As part of Harleysville's briefing submitted in support of its motions for summary judgment and default judgment, Harleysville submitted a declaration from Jeffrey A. Beer Jr., Esq. attaching various exhibits (*see* Dkt. No. 268, the "Beer Declaration").  On July 2, 2024, Consigli moved to strike the Beer Declaration on the basis that is did not comply with S.D.N.Y. Local Civil Rule 56.1 or the Court's Individual Rules and Practices.  *See* Consigli Strike Mot. at 1; *see also* Zurich Opp. at 4 (echoing Consigli's argument that the Beer Declaration should be stricken due to its failure to comply with Local Civil Rule 56.1).  Compliance with Local Civil Rule 56.1 is crucial for summary judgment because it provides the opposing party an opportunity to respond to specific factual assertions and also allows the court to efficiently evaluate each party's contentions to determine their veracity and if any material facts are genuinely disputed,

---

[10] As part of its motions for summary judgment, Zurich asks the Court to issue a declaration that the any coverage afforded to Consigli pursuant to the Zurich Policies is excess to the coverage afforded to Consigli as an additional insured under the Harleysville Policies and the National Union-Hig Excess Policy because those policies are primary and non-contributory.  *See* Zurich Mot. at 2, 21–27.  As discussed with respect to Catlin and Starr's motions for summary judgment, the Court does herein hold that the Harleysville Policies and National Union-Hig Excess policies are primary and non-contributory. But because the Court also finds that any coverage Zurich may have owed Consigli is invalidated due to untimely notice and the prejudice resulting therefrom, and thus rules in favor of Zurich on its affirmative defense as to all claims asserted against it in this action, the Court declines to reach the issue of the priority of coverage between the Harleysville Policies, the National Union-Hig Excess Policy, and the Zurich Policies.  All other relief sought by Zurich's motion for summary judgment is otherwise granted.

which is (of course) the central task of a court at this procedural posture. *See Becker v. State Farm Fire and Cas. Ins. Co.* 2024 WL 1051164 at *16 (E.D.N.Y. Jan. 29, 2024). While the Court tends to agree with the positions set forth in Consigli's motion to strike regarding the Beer Declaration and potential misrepresentations of the record contained therein, *see generally* Consigli Strike Mot. at 5–7, because the Court herein denies Harleysville's motion for summary judgment for the independent reasons detailed above and therefore grants all the relief Consigli seeks in its motion to strike, the motion to strike is DENIED as moot.

## IV.    HARLEYSVILLE'S MOTIONS FOR DEFAULT JUDGMENT

Concurrently with its motion for summary judgment, Harleysville has moved for default judgment against Defendants Hig and Domestic, the Defaulting Defendants. *See* Dkt. Nos. 252, 253 (the "Beer Default J. Decl."). Harleysville's motion for default seeks a declaratory judgment that it has no obligation to provide a defense to or to indemnify either of the Defaulting Defendants in connection with the underlying action and that it is entitled to withdraw its defense of both the Defaulting Defendants the underlying action. *See* Beer Default J. Decl. ¶¶ 28–29; *see also* Dkt. No. 253-6 (the Proposed Default Judgment Order). The Defaulting Defendants, having failed to answer or otherwise move with respect to Harleysville's Second Amended Complaint, and as demonstrated by the Clerk's Certificates of Default issued against them, are in default in this action. *See* Beer Default J. Decl. ¶¶ 11–17, 21–24.

A defendant against whom default is entered is deemed to have admitted the well-pleaded factual allegations in the complaint establishing liability. *See* Fed. R. Civ. P. 8(b)(6); *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013). However, "[w]hen [a] defendant in a multi-defendant action defaults, judgment should not be entered against the defaulting defendant until the matter has been resolved against the other defendants." *El Omari v. Buchanan*, No. 20 CIV.

2601 (VM), 2021 WL 465431, at *2 (S.D.N.Y. Feb. 9, 2021) (internal references omitted); *see also Hudson v. Imagine Entm't Corp.*, 128 F. App'x 178 (2d Cir. 2005) (summary order) ("To allow [the plaintiff] to recover a default judgment against one defendant when claims against similarly situated co-defendants have been found to be meritless would be 'unseemly and absurd, as well as unauthorized by law.'") (internal references omitted).  "[A] default judgment entered against one defendant, while others remain in the case, cannot stand when it would be logically inconsistent for some [defendants] to be held liable while others are not."  *El Omari v. Buchanan*, 2021 WL 465431, at *3 (quoting *Farberware, Inc. v. Groben*, No. 89 Civ. 6240, 1991 WL 123964, at *3 (S.D.N.Y. July 3, 1991 (internal references omitted)).

Harleysville's basis for requesting a declaration that it has no duty to defend Hig in the underlying action is its assertion that Consigli's remaining claims against Hig are barred from coverage by the Damage to Property Exclusions, which are j(5) and j(6) in the Harleysville Policies.  *See* Harleysville Mot. at 39; JSUF Ex. A at 44, Ex. C at 42.  Harleysville's basis for a declaration that it has no duty to defend Domestic in the underlying action is based on its assertion that all of its duties under the Harleysville-Domestic Excess Umbrella Policy were extinguished by the Partial Settlement.  *See* Harleysville Mot. at 38.  Because the Court herein determines that summary judgment cannot be awarded to Harleysville on the claim that it owes no duty to defend Consigli (the non-defaulting defendant), in part due to remaining material disputes of fact on these exact issues, entering an order granting default judgment as to Hig and Domestic on these same bases raises serious concerns of logical inconsistencies and inequity as to Consigli.  *See El Omari*, 2021 WL 465431, at *3 ("The key inquiry is whether the default judgment could result in inconsistent outcomes for similarly situated defendants.").  For these reasons, Harleysville's motion for default judgment against Hig and Domestic is DENIED

without prejudice to renew after the merits of all remaining claims as to Consigli, the similarly situated non-defaulting defendant, are resolved.  Any potential prejudice to Harleysville is ameliorated by the entry of the Clerk's certificates of default (*i.e.* "default" but not "default judgment") against Hig on September 15, 2023 (Dkt. No. 202) and against Domestic on March 20, 2024 (Dkt. No. 241), which will preclude Hig and Domestic, from the date of the certificate of default forward, "from arguing the merits of the claims made against them." *Diarama Trading Co. v. J. Walter Thompson, U.S.A., Inc.*, 01 Civ. 2950 (DAB), 2002 WL 31545845, at *4 (S.D.N.Y. Nov. 13, 2002).

**CONCLUSION**

For the foregoing reasons, Zurich's motions for summary judgment (Dkt. Nos. 243, 244, 245) are GRANTED; Catlin's motion for summary judgment (Dkt. No. 275) is GRANTED; Starr's motion for summary judgment (Dkt. No. 254) is GRANTED; National Union's motion for summary judgment (Dkt. No. 271) is DENIED; Harleysville's motion for summary judgment (Dkt. No. 267) is DENIED; Consigli's motion to strike (Dkt. No. 287) is DENIED as moot; and Harleysville's motion for default judgment (Dkt. No. 252) is DENIED without prejudice to renew.  The Clerk of Court is respectfully directed to terminate Dkt. Nos. 243, 244, 245, 252, 254, 267, 271, 275, and 287 and to enter judgment accordingly.

The parties are ORDERED to meet and confer and to file a joint status letter on or before **March 24, 2025**, proposing next steps in this action.

Dated:  March 3, 2025
       New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge