USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/23/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARLEYSVILLE WORCESTER INSURANCE
COMPANY, et al.,

                              Plaintiffs,

        -against-

CONSIGLI & ASSOCIATES, LLC, f/k/a T.G.
NICKEL & ASSOCIATES, LLC, et al.,

                              Defendants.

21-CV-00934 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

On March 3, 2025, the Court issued an Opinion and Order (the "Opinion") denying, *inter alia*, motions for summary judgment by Plaintiffs Harleysville Worcester Insurance Company and Harleysville Insurance Company (together, "Harleysville") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). *Harleysville Worcester Ins. Co., et al. v. Consigli & Assocs., LLC, et al.*, No. 21-CV-00934 (MMG), 2025 WL 673327 (S.D.N.Y. Mar. 3, 2025); Dkt. No. 348. Now before the Court are motions for reconsideration and/or clarification from Harleysville and National Union. Dkt. Nos. 351 & 353. For the reasons discussed herein, the Court DENIES Harleysville's motion for reconsideration, and GRANTS IN PART and DENIES IN PART National Union's motion for reconsideration.

## FACTS & PROCEDURAL HISTORY

The Court shall presume familiarity with the Opinion denying Harleysville's and National Union's motions for summary judgment and adopts the defined terms used therein.[1] The following brief factual background is drawn from the undisputed facts in the Opinion.

This is an insurance coverage dispute, initiated by Harleysville on February 3, 2021, in which Harleysville seeks, *inter alia*, a declaration that they have no duty to defend or indemnify their policyholder Consigli in an ongoing underlying New York State Supreme Court action. The underlying action was initiated by 99 Wall on November 16, 2017.  *See* JSUF Ex. L (the complaint in the underlying action); *see also id.* Exs. M & N (the amended complaint and second amended complaint, respectively, in the underlying action).  By contract dated February 24, 2015, 99 Wall hired Consigli as the construction manager for the Project at property located at 99 Wall Street, New York, New York, 10005.  *See id.* Ex. I.  Consigli hired Domestic and Hig as subcontractors for the Project.  *See id.* Exs. J & K (subcontracts with Domestic and Hig, respectively).

As relevant to this opinion, the Harleysville Policies issued to Domestic and Hig[2] include an exclusion of certain property damage, meaning that their insurance coverage does not extend to the following:

---

[1] In the Opinion and Order on Harleysville and National Union's motions for summary judgment, the Court used defined term references to the memoranda of law in support of and in opposition to the motions.  *See* Dkt. No. 348 at 3 n.1.  The Court shall not adopt those references for purposes of this Opinion and Order, and, instead, shall refer to the memoranda of law in support of and in opposition to Harleysville and National Union's motions for reconsideration as follows:  Dkt. No. 351 ("Harleysville Mot."); Dkt. No. 353 ("National Union Mot."); Dkt. No. 356 ("Catlin Opp."); Dkt. No. 357 ("Consigli Opp."); Dkt. No. 361 ("National Union Reply"); Dkt. No. 363 ("Harleysville Reply").

[2] The Harleysville-Domestic Primary Policy (policy number MPA00000089724P) and Harleysville-Domestic Excess Umbrella Policy (policy number CMB00000089725P) were issued to Domestic and effective from February 4, 2016, to February 4, 2017.  JSUF Exs. A & B.  The Harleysville-Hig Primary Policy (policy number MPA00000057268V) was issued to Hig and effective from April 4, 2016, to April 4, 2017.  *Id.* Ex. C.

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it.

*See* Harleysville Policies §§ I(2)(j) ("Exclusion J"), V(17) (defining "property damage"), V(22) (defining "your work"); *see also id.* at 1 (defining "you" and "your" as the Named Insured and any other person or organization qualifying as a Named Insured under the policies).

Similarly, the National Union-Hig Excess Policy issued to Hig[3] includes an exclusion of certain property damage related to contractors, meaning that its insurance coverage does not extend to the following:

2. Property Damage to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the Insured[.]

*See* National Union-Hig Excess Policy §§ V(C) (the "Contractors Exclusion"), VII(N) (defining "Insured"), VII(AA) (defining "Property Damage"); *see also id.* §§ V(G)(5)–(6) (excluding property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations" and "that particular part of real property that must be restored, repaired or replaced because [y]our [w]ork was incorrectly performed on it").

In the underlying action, 99 Wall seeks damages related to two water events, one of which occurred on or about July 28, 2016, and the other of which occurred on or about October

---

[3] The National Union-Hig Excess Policy (policy number BE038239687) was effective April 4, 2016, to April 4, 2017. Harleysville purported to append the National Union-Hig Excess Policy as Exhibit D to the JSUF, however, Exhibit D was never filed on ECF. *See* JSUF & Dkt. Nos. 258–66. The National Union-Hig Excess Policy is attached as Exhibit N to the Affirmation of Jacob R. Zissu in support of Starr's motion for summary judgment. *See* Dkt. No. 257 Ex. N.

7, 2016, at the Project. To date, the trial court in the underlying action has not ruled on whether

Consigli is liable for the water events and, if so, at what percentage of fault.

On September 13, 2022, 99 Wall, Harleysville, Hig, and Domestic entered into the Partial

Settlement, under which Harleysville paid a total of $3,500,000 for the water events. *See* JSUF

Ex. O. Consigli was not a signatory to the Partial Settlement, but 99 Wall agreed to release any

and all claims against Consigli relating to or arising from or in connection with Hig's work at the

Project, except for the claims asserted in the underlying action against Consigli. *Id.* ¶¶ 3(b) & 5.

On July 28, 2023, Consigli filed a Third Amended Answer with Counterclaims, Crossclaim, and

Third-Party Complaint against Harleysville, alleging that Harleysville acted in bad faith and in

breach of its duty of good faith and fair dealing by entering into the Partial Settlement (the "Bad

Faith Counterclaims"). *See* Dkt. No. 175 ¶¶ 119–29 (breach of implied covenant of good faith

and fair dealing under the Harleysville-Hig Primary Policy), 130–39 (breach of implied covenant

of good faith and fair dealing under the Harleysville-Domestic Policies), 140–46 (violation of

N.Y. Gen. Bus. Law § 349). Discovery and proceedings related to the Bad Faith Counterclaims

have been stayed since December 20, 2023. *See* Dkt. No. 220.

On April 19, 2024, Harleysville (Dkt. No. 267), National Union (Dkt. No. 271), Catlin

(Dkt. No. 275), Starr (Dkt. No. 254), and Zurich (Dkt. Nos. 243, 244, 245) moved for summary

judgment. On March 3, 2025, the Court issued the Opinion denying, among other things,

summary judgment to Harleysville and National Union, and granting summary judgment to

Catlin, Starr, and Zurich.

On March 17, 2025, Harleysville moved the Court to reconsider the denial of summary

judgment to Harleysville and grant of summary judgment to Catlin. Dkt. No. 351. Specifically,

Harleysville seeks reconsideration of three of the Court's holdings: (1) the Court's holding that

the Partial Settlement does not absolve Harleysville of its continuing duty to defend Consigli;

(2) the Court's holding that Exclusion J does not absolve Harleysville of its duty to indemnify

Consigli; and (3) the Court's holding that Harleysville is not entitled to contribution from Catlin.

Harleysville Mot. at 1–10. Harleysville further seeks clarification concerning whether

Harleysville's coverage obligations are triggered by 99 Wall's alleged consequential damages in

the underlying action, related to 99 Wall's alleged delayed ability to sell condo units, and, if so,

seeks reconsideration of the Court's holding that Harleysville's coverage obligations extend to

consequential losses caused by Consigli's alleged failure to timely complete its work. *Id.* at 10–

11.

On March 18, 2025, National Union moved the Court to clarify, or, if necessary,

reconsider, the applicability of the Contractors Exclusion. Dkt. No. 353. National Union argues

the Contractors Exclusion is more expansive than Exclusion J in the Harleysville Policies and

bars coverage for Consigli in the underlying action. National Union Mot. at 2–5.

Consigli opposes both Harleysville's and National Union's motions for reconsideration

and/or clarification. Catlin only opposes Harleysville's motion for reconsideration and/or

clarification and takes no position on National Union's motion for reconsideration and/or

clarification. *See* Dkt. No. 355.

## DISCUSSION

For various reasons, as detailed below, the Court denies Harleysville's motion for

reconsideration because it is procedurally improper and fails on the merits. The Court grants

National Union's motion for clarification on the Court's holding with respect to the Contractors

Exclusion. However, the Court denies National Union's motion for reconsideration of its denial

of summary judgment against National Union.

5

## I.    LEGAL STANDARD

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also* Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").

It is well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *Phoenix Ins. Co. v. Allied World Nat'l Assurance Co.*, No. 22-CV-06134 (JSR), 2024 WL 622329, at *2 (S.D.N.Y. Feb. 14, 2024) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "A motion for reconsideration is not an opportunity for a [party] to 'relitigate an issue already decided' or present arguments that could have been made before the judgment was entered." *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Shrader*, 70 F.3d at 257); *see also Smith v. Simon & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014) ("Such a motion is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'") (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)).

A motion for reconsideration should be granted only if the movant identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL*

*Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted); *see, e.g.*, *Travelers Indem. Co. v. Harleysville Ins. Co.*, No. 21-CV-01089 (MKB), 2024 WL 5657654, at *5 (E.D.N.Y. May 7, 2024) (granting Harleysville's motion for reconsideration because the court had overlooked Second Circuit case law).

## II.   HARLEYSVILLE'S MOTION

In its summary judgment briefing, Harleysville extensively argued that (1) it has no duty to defend Consigli post-Partial Settlement, Dkt. No. 269 ("Harleysville MSJ Mot.") at 24–27, Dkt. No. 309 ("Harleysville MSJ Opp.") at 8–17, Dkt. No. 326 ("Harleysville MSJ Reply") at 11–17; (2) it has no duty to indemnify Consigli, Harleysville MSJ Br. at 31, Harleysville MSJ Reply at 11–17; and (3) it is entitled to contribution from Catlin, Harleysville MSJ Br. at 34–46, Harleysville MSJ Opp. at 21–23, Harleysville MSJ Reply at 22–23.  In its motion for reconsideration, Harleysville attempts to rehash issues extensively briefed by the parties and decided by the Court.  And to the extent Harleysville raises new arguments, such arguments are an impermissible "second bite at the apple" because Harleysville could have previously made these arguments.  *See Phoenix Ins. Co.*, 2024 WL 622329, at *2.

### A.  Harleysville's Post-Partial Settlement Coverage

In sum, Harleysville's position that the Court should reconsider its holding that Harleysville retains a duty to defend Consigli post-Partial Settlement is based on reiterations of the same arguments raised in its summary judgment briefing and a misapprehension or mischaracterization of the impact of Consigli's stayed Bad Faith Counterclaims.

First, Harleysville argues that it was clear error for the Court to find a disputed issue of material fact as to the enforceability of the Partial Settlement.  Harleysville Mot. at 1–2.  To clarify, the Court found there was a dispute specifically as to whether the Partial Settlement was binding on Consigli's entitlement to a defense and indemnity by Harleysville, given Consigli's

assertion of the Bad Faith Counterclaims.  As Harleysville concedes, Harleysville and Zurich had heavily disputed this very issue in their summary judgment briefing.  *See* Harleysville Reply at 1–2.  Zurich argued that there was a dispute of material fact as to whether Harleysville could rely on the Partial Settlement because Consigli's Bad Faith Counterclaims could prove successful.  *See* Harleysville MSJ Opp. at 8–17.  While Harleysville makes much of the fact that Consigli itself did not contest the "enforceability" of the Partial Settlement, *see* Harleysville Reply at 1–2, Consigli was not required to dispute the impact of the Partial Settlement on its entitlement to a defense and indemnity by Harleysville in order for the Court to find that there was a dispute of material fact precluding summary judgment in favor of Harleysville.  Accordingly, Harleysville is incorrect that it is an undisputed fact that the Partial Settlement is enforceable to the extent that it voids Consigli's entitlement to a defense and indemnity by Harleysville, and the Court clearly rejected Harleysville's arguments that, as a matter of law, the Partial Settlement resolves Harleysville's duty to defend when Consigli's Bad Faith Counterclaims remain unresolved on the merits.  *See* Opinion at 31–32.

Next, Harleysville reiterates the same arguments raised in its summary judgment briefing regarding the Partial Settlement's exhaustion of the Harleysville-Domestic Policies and the additional insured coverage available under the Harleysville-Hig Primary Policy.  *See* Harleysville MSJ Mot. at 24–27; Harleysville MSJ Opp. at 7–8; Harleysville MSJ Reply at 1; Harleysville Mot. at 4–6.  The Court clearly rejected Harleysville's arguments regarding its additional insured coverage under the Harleysville-Hig Primary Policy and held that Consigli does qualify as an additional insured under the policy's clear and unambiguous provisions.  *See* Opinion at 24–26.  And the Court expressly declined to determine "whether the scope of the language of the Partial Settlement and the Stipulation would potentially extinguish Harleysville's

duty to defend Consigli." *Id.* at 32.  The Court did not and cannot determine, as a matter of law, that the Harleysville-Domestic Policies were exhausted by the Partial Settlement because that would presume the enforceability of the Partial Settlement as to Consigli's rights and, necessarily, the failure of Consigli's Bad Faith Counterclaims.  The fact that Harleysville is "between a rock and [a] hard place," Harleysville Mot. at 6, is a function of the bifurcated nature of these proceedings, which was specifically requested by Harleysville in response to Consigli's motion to stay this action, *see* Dkt. No. 210 at 14–16, not because the Opinion failed to rely on controlling law, failed to consider newly available evidence, or committed clear error.[4]  *See Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.

The Court's holding that Harleysville currently owes Consigli a duty to defend post-Partial Settlement does not cause manifest injustice.  At this stage of the litigation, the Court has properly treated the Partial Settlement as having no superseding effect on the terms of the Harleysville Policies.  Harleysville mischaracterizes the Opinion as awarding Consigli a continued defense from Harleysville as improper "bad faith damages" or a "provisional remedy" in connection with Consigli's Bad Faith Counterclaims.  *See* Harleysville Mot. at 2–4.  Rather, the Opinion held that Harleysville retained a duty to defend Consigli in the underlying action based on the plain and unambiguous language of the Harleysville Policies and because

---

[4] Harleysville argues that "Consigli's [Bad Faith Counterclaims] were asserted and then quickly stayed, at Consigli's request."  Harleysville Mot. at 3.  In October 2023, Consigli moved to stay all proceedings pending the final resolution of the underlying action.  Dkt. No. 205.  In opposition to Consigli's motion, Harleysville did not oppose staying the Bad Faith Counterclaims, and in fact asserted that "it [would] be more efficient to stay those claims."  Dkt. No. 210 at 14.

Moreover, setting aside Harleysville's improper attempts to litigate the merits of the Bad Faith Counterclaims, Harleysville may now, at any point, move to lift the stay to the extent it believes that there has been a change in circumstances warranting lifting the stay.  In the order staying the Bad Faith Counterclaims pending the resolution of the underlying action, Judge Engelmayer reasoned in part that allowing proceedings to go forward on the Bad Faith Counterclaims could "compromise the defense of the underlying action."  *See* Dkt. No. 220.

Harleysville's arguments disclaiming coverage were unavailing.  *See* Opinion at 24–31.  The

Court's holding regarding Harleysville's duty to defend is not based on any finding of merit or

truth to the allegations in Consigli's Bad Faith Counterclaims, and, consistent with New York

law, merely enforces Harleysville's contractual obligations under the controlling language of the

policies.  *See* Harleysville Mot. at 2 ("The duty to defend is a product of the insurance contract.")

(emphasis omitted) (citing *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 840 N.Y.3d 708,

714 (2007)); *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) ("In

determining whether a duty to defend exists, courts are to 'compare the allegations of the

complaint to the terms of the policy.'") (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins.

Grp.*, 74 N.Y.2d 298, 302 (1989)); *cf.* Harleysville Reply at 2 ("Because Consigli is seeking a

contractual remedy, the Court should have declared the rights and obligations of the parties

*under the insurance contract*, and found that Harleysville has no such contractual duty to

defend.") (emphasis in original).  The case law cited by Harleysville regarding the remedies

available for bad faith claims and the intersection between bad faith claims and contractual

claims, *see* Harleysville Mot. at 2–4, further supports the Court's holding that Harleysville's duty

to defend, in connection with the contractual claims in this action, is separate from any potential

damages owed to Consigli in connection with the Bad Faith Counterclaims.

  A holding to the contrary, *i.e.*, that Consigli is not entitled to continued defense by

Harleysville, would contravene the purposes of the implied covenant of good faith and fair

dealing, which serves to protect the bargained-for terms of the policies.  *See Pavia v. State Farm

Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452 (1993) ("The duty of 'good faith' settlement is an

implied obligation <u>derived from</u> the insurance contract.") (emphasis added).  Inherent in

Harleysville's duty to defend is a duty to settle any claims or suits in good faith.  *See Forest Ins.,*

*Ltd. v. Am. Motorists Ins. Co.*, No. 89-CV-04326 (BN), 1994 WL 97138, at *10 (S.D.N.Y. Mar. 21, 1994) ("A legal correlative of a carrier's right and duty to defend and its control over settlement negotiations, pursuant to a standard liability policy, is an obligation to its insured to make good faith settlement efforts within policy limits."); *Brown v. U.S. Fid. & Guar. Co.*, 314 F.2d 675, 677–78 (2d Cir. 1963) ("[W]e are convinced that the good-faith settlement standard controls in New York in cases of an assured's personal liability resulting from the insurer's failure to settle within policy limits.").  Accordingly, a ruling at this stage of the litigation that Harleysville does not owe Consigli a continued defense post-Partial Settlement would be improper, since it would necessarily be premised on an implicit finding that the Partial Settlement was a product of good faith settlement efforts by Harleysville, thereby finding that Consigli cannot prevail on the Bad Faith Counterclaims when those claims have been stayed, on consent.  On the other hand, if Consigli does not ultimately prevail on the Bad Faith Counterclaims, and assuming Harleysville is correct that the post-Partial Settlement claims are not covered by the Harleysville Policies for one reason or another, Harleysville has not established that it will be unable to pursue an appropriate remedy.[5]  *See, e.g.*, *Petroterminal de Panama, S.A. v. Houston Cas. Co.*, 114 F. Supp. 3d 152, 158–61 (S.D.N.Y. 2015) (holding that the insurers were entitled to reimbursement from their insured for certain defense costs they had previously advanced to the insured under a separate defense cost agreement where "the [insurance] policy [did] not specify otherwise").

---

[5] In its reply, Harleysville decries the "self-evident" prejudice it faces because "according to Consigli, Harleysville is remediless and can never recover the cost of the defense that Harleysville is wrongly being forced to provide, even when the [Bad Faith Counterclaims] are eventually dismissed on the merits."  Harleysville Reply at 4.  Nowhere in its opposition does Consigli take such a position.  *See generally* Consigli Opp.

11

Thus, for all the reasons stated above, the Court declines to reconsider its holding that, at least for now, Harleysville owes Consigli a duty to defend post-Partial Settlement.

### B.  Exclusion J

Harleysville has not shown that the Court's holding that Exclusion J does not apply to Consigli is clear error—the Court did not overlook any evidence, controlling law, or argument in determining that the plain terms of Exclusion J do not apply to the property damage allegedly attributable to Consigli.  Instead, Harleysville relies again on arguments set forth in its summary judgment briefing and considered and rejected by the Court in the Opinion.  *See* Harleysville MSJ Mot. at 18–20; Harleysville MSJ Opp. at 5; Harleysville MSJ Reply at 9–11.  On this basis alone, reconsideration is inappropriate.  *See Goonan v. Fed. Res. Bank of N.Y.*, No. 21-CV-03859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Although Defendant has bolstered those arguments with a few more citations, their essential character remains unchanged.  In many respects, this motion for reconsideration thus appears to be little more than an effort to re-litigate an issue that the Court has already decided.  Simply put, courts do not tolerate such efforts . . . .").

Moreover, as the Court explained in the Opinion and will briefly explain again here, Harleysville's arguments fail on the merits.  After conceding that the word "you" refers to the Named Insureds (Domestic or Hig), Harleysville argues that Exclusion J is not solely applicable to Domestic, Hig, or their work, and that it would be "incongruous" for Consigli, an additional insured, to be afforded greater coverage.  Harleysville Mot. at 7–8.  For the reasons stated in the Opinion, Harleysville has not carried its heavy burden of demonstrating that Exclusion J applies.  Both the breadth of Exclusion J (including Harleysville's purported distinction between the property versus Domestic or Hig's "work") and any purported ambiguity over whether some of the damages alleged were to the property on which Domestic or Hig worked must be interpreted

12

in favor of coverage, consistent with the plain language of the policy. *See* Opinion at 28 (citing *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). The Court is not convinced by Harleysville's interpretation of "you" as qualifying only what property could be covered, but even if the Court did credit Harleysville's interpretation, as stated in the Opinion, the "particular part(s)" of the Project that Domestic and Hig worked on were the electrical and plumbing systems. *See* Opinion at 29 n.7. Harleysville cites to no authority, either in law or common sense, for its assertion that the Court must be precluded from finding that Harleysville retains a duty to indemnify Consigli by the fact that the hole drilled by Hig was "mere feet from the elevator control panel" that was allegedly damaged by the first water event, *see* Harleysville Mot. at 8—the ceiling of the elevator control room and the elevator control panel itself are distinct and particular parts of the Project.

Finally, as argued by Consigli in its opposition, Harleysville also wrongly suggests that it is incorrect as a matter of law that Consigli could hold greater coverage than Domestic or Hig, or that such an outcome would be a manifest injustice. *See* Consigli Opp. at 5. The district court's opinion in *American Trucking and Transportation Insurance Co. v. Liberty Mutual Insurance Co.* is at best inapposite, as the district court was applying Montana law, and at worst substantively meaningless, as the district court was reversed on this point by the Second Circuit. *See* 765 F. App'x 571, 573 (2d Cir. 2019) (summary order) (holding that interpreting an exclusion to apply only to the named insured, while allowing coverage to an additional insured, was not in contravention with Montana public policy).

Thus, the Court declines to reconsider its holding that Exclusion J does not bar Harleysville's duty to defend Consigli.

### C. Contribution from Catlin

In its moving papers, Harleysville asks the Court to reconsider its holding that Catlin is not required to reimburse Harleysville for a share of pre-Partial Settlement defense costs, plus interest. Harleysville Mot. at 8–10. Harleysville also seeks, in the alternative, reconsideration of the Court's grant of Catlin's "motion for reconsideration based on the Partial Settlement," to the extent that such a decision is inconsistent with the Court's determination that the Partial Settlement might become void and unenforceable.[6] *Id.* at 9 (emphasis omitted). Harleysville dropped these arguments in its reply and failed to address any of the arguments raised by Catlin in its opposition. *See generally* Harleysville Reply. Accordingly, the Court deems Harleysville's request to be abandoned and declines to reconsider its holding that Harleysville is not entitled to contribution from Catlin.[7] *See Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.*, 176 F.3d 601, 609 (2d Cir. 1999) (declining to consider an argument where the proponent failed to address opposing arguments in its reply); *see, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*, 722 F. Supp. 3d 347, 352 n.1 (S.D.N.Y. 2024).

### D. Consequential Delay Damages

Harleysville seeks clarification, or, if needed, reconsideration, on whether Harleysville's "coverage obligations" extend to consequential losses due to Consigli's alleged failure to timely complete its work. Harleysville Mot. at 10–11. Consigli argues that (1) the Court should wait to

---

[6] Harleysville seems to be referring to the Court's grant of Catlin's motion for summary judgment, since Catlin has not moved for reconsideration. As discussed *supra*, the Court did not hold that the Partial Settlement was potentially void or unenforceable as a general matter.

[7] In any event, Harleysville has not met the strict standard for granting a motion for reconsideration on the Court's grant of summary judgment in favor of Catlin or the Court's holding regarding Catlin's contribution obligation, given that Harleysville does not point to any controlling decisions or data that the Court overlooked or raised any clear error or manifest injustice. *See Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012); Catlin Opp. at 2; Opinion at 33–35.

rule on Harleysville's duty to indemnify, unless and until the underlying action is resolved and the nature and amount of Consigli's alleged liability has been determined; and, (2) in the alternative, the Court should find that any damages related to the loss of use of the building are covered under the Harleysville Policies and pre-exist the Project. Consigli Opp. at 6–8.

The Court finds that clarification is not warranted. Under Rule 60(a) of the Federal Rules of Civil Procedure, a court may clarify or explain an order "to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." *Commerzbank AG v. Bank of N.Y. Mellon*, No. 15-CV-10029 (GBD) (BCM), 2024 WL 1309239, at *2 (S.D.N.Y. Mar. 27, 2024) (internal marks omitted) (quoting *Greer v. Mehiel*, No. 15-CV-06119 (AJN), 2017 WL 128520, at *2 (S.D.N.Y. Jan. 12, 2017)); *see also* Fed. R. Civ. P. 60(a). "[A] motion for clarification is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order." *Commerzbank AG*, 2024 WL 1309239, at *2 (quoting *McCaffrey v. Gatekeeper USA, Inc.*, No. 14-CV-00493 (VSB), 2022 WL 1321494, at *1 (S.D.N.Y. May 3, 2022)).

Harleysville's motion for clarification must be denied because Harleysville has failed to identify any ambiguity in the cited portions of the Opinion. The Court interprets Harleysville's general and ambiguous references to "coverage obligations" as referring to Harleysville's continuing duty to defend and continuing duty to potentially indemnify Consigli in the underlying action. Harleysville concedes that the Opinion is clear that the Court found Harleysville retains a duty to defend based on explicit allegations in the underlying action that "Consigli's [alleged] negligence caused damage to property separate and distinct from Consigli's

own work," Harleysville Mot. at 10, but argues that "it follows that consequential losses flowing from this 'third-party property damage' may be covered at the indemnification stage." *Id.*

The portions of the Opinion to which Harleysville points concern the Court's holding and reasoning that the claims in the underlying action against Consigli <u>may</u> constitute an occurrence. Opinion at 27–28. That is to say, the claims in the underlying action raise a material question of fact as to "whether the water events were 'accidents' or 'faulty workmanship' as those terms are defined and used in the Harleysville Policies or under New York law, respectively[,]" which ultimately precluded a finding of summary judgment in favor of Harleysville. *Id.* at 27. And ultimately, the Court held that Harleysville has a duty to defend because the underlying action concerns "allegations that clearly and unambiguously name Hig and Domestic as the causes of the damages suffered by 99 Wall." *Id.* at 24. The Court further cited to New York case law which stands for the principle that Harleysville's duty to defend extends to the entire action, even if it may not ultimately be required to pay once the action has run its course. *Id.* at 24–25 (citing *Frontier Insulation Constrs. v. Merchant Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) and *Natural Organics, Inc. v. OneBeacon Am. Ins. Co.*, 102 A.D.3d 756, 758 (2d Dep't 2013)). The Opinion is clear—Harleysville's duty to defend Consigli in the underlying action extends to the entire action, even to the claimed losses that Harleysville casts as attributable to Consigli's alleged failure to timely complete its work. Harleysville's arguments to the contrary are, again, reiterations of the same arguments made in its summary judgment briefing and rejected by the Court. *See* Opinion at 26 (citing Harleysville MSJ Mot. at 10–16).

To that end, construed as a motion for reconsideration, Harleysville's request fares no better. Setting aside Harleysville's attempt to relitigate the issue of its duty to defend, Harleysville does not point to any matter "that might reasonably be expected to alter the

16

conclusion reached by the Court." *Shrader*, 70 F.3d at 257. As Harleysville conceded in its moving papers, the Court clearly held that Harleysville owes a duty to defend based on allegations of damage to property by Domestic and Hig, separate and distinct from Consigli's own work. Harleysville Mot. at 10. Harleysville's potential duty to indemnify is ultimately dependent on the outcome of the underlying action for the reasons stated in Consigli's opposition. *See* Consigli Opp. at 6–7; *see, e.g.*, *Specialty Nat. Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 468 (S.D.N.Y. 2009) (holding the insurer had a duty to defend and denying the insurer's request for a declaratory judgment that it has no duty to indemnify as premature).

Thus, Harleysville's motion to clarify or reconsider the Court's holding is denied because it is, essentially, a procedurally improper and premature attempt to seek a declaration that it has no duty to indemnify Consigli for any alleged damages in connection with 99 Wall's delayed ability to sell condo units at the property. *See Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115–16 (2d Cir. 1995) ("[W]here the policy includes an obligation to defend, if there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability."); *Hout v. Coffman*, 126 A.D.2d 973, 973 (4th Dep't 1987) ("An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action.").

III.   **NATIONAL UNION'S MOTION**

In its summary judgment briefing, National Union extensively argued that the Contractors Exclusion applies more broadly to damage to any aspect of the Project, involving the entire building, being worked upon by Consigli. *See* Dkt. No. 272 ("National Union MSJ Mot.") at 15–17; Dkt. No. 285 ("National Union MSJ Opp.") at 9; Dkt. No. 324 ("National Union MSJ Reply") at 7–9. The Contractors Exclusion provides that coverage does not extend to property damage "to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the Insured." National Union-Hig Excess Policy § V(C)(2). In its motion for clarification or, as necessary, reconsideration, National Union seeks clarification of the Court's ruling on the Contractors Exclusion, arguing that the Court's "blanket ruling" does not account for the "distinct" and "differing" language between the Contractors Exclusion and the Harleysville Policies' exclusions. *See* National Union Reply at 2. The Court shall grant National Union's motion for clarification, given the Opinion's summary treatment of the Contractors Exclusion, to specifically address and reject National Union's arguments regarding the Contractors Exclusion.

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *W. Waterproofing Co. v. Zurich Am. Ins. Co.*, 685 F. Supp. 3d 157, 167 (S.D.N.Y. 2023) (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)). Where there are ambiguities in the language of a policy, they are construed strictly against the insurer. *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 552, 561 (2021). But when the provisions of a policy are unambiguous and understandable, courts are to enforce them as written. *See Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir. 1999).

New York law further dictates that an insurance policy should be construed in congruence with "common speech . . . and the reasonable expectation and purpose of the ordinary businessman." *W. Waterproofing Co.*, 685 F. Supp. 3d at 167 (quoting *Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983)). Courts look to the language of the policy and interpret it "in a way that affords fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Raymond Corp. v. Nat'l Fire Union Ins. Co. of Pittsburgh*, 5 N.Y.3d 157, 162 (2005) (quoting *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221–22 (2002)).

"Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage." *Consol. Edison Co. of N.Y.*, 98 N.Y.2d at 218. In order to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that could fairly be placed thereon." *Parks Real Estate Purchasing Grp.*, 472 F.3d at 42 (internal alteration and quotation marks omitted); *see also Pioneer Tower Owners Ass'n v. Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 306 (2009) ("The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds.").

National Union's arguments center around the plain language of the Contractors Exclusion, which excludes damage to "property," without the qualification of "the particular part" of any property. *See* National Union Mot. at 2–3; National Union Reply at 2. National Union argues that "property" should be interpreted to refer to the entire building at 99 Wall Street because "the Project was a renovation and conversion of [the] existing structure" at that property. National Union Mot. at 3. The Court does not find National Union's interpretation of

"property" to be "the only construction that could fairly be placed thereon," *Parks Real Estate Purchasing Grp.*, 472 F.3d at 42, especially where "property" is undefined in the policy.[8]  For example, with respect to the first water event, "property" could still be interpreted only to apply to the ceiling of the elevator control room because that was the piece of real property that was allegedly "worked upon" by Hig, not the elevator control panel which was allegedly damaged by the ensuing water event.  Nothing in the plain language of the National Union-Hig Excess Policy precludes this narrower interpretation, despite National Union's attempt to cast this more limited interpretation as solely derived from a construction of "that particular part."

Furthermore, the "differing language" between the National Union-Hig Excess Policy and the Harleysville Policies, and the two cases cited by National Union in support of its broader interpretation, do not compel summary judgment in favor of National Union.  To start, both cases are out-of-Circuit cases in which the courts did not apply New York law.  Setting this fact aside, in the first case, *Big-D Construction Midwest, LLC v. Zurich American Insurance Co.*, the court found that the language "property being worked upon" in an identical exclusion was subject to two plausible interpretations—"[o]n the narrow end of the spectrum, it could refer only to work that is, at that very moment, actively undergoing operations," and "at the far end of the spectrum, . . . the entire construction project is 'being worked upon' until the entire construction project is

---

[8] Moreover, National Union's interpretation of the Contractors Exclusion would arguably subsume the Damage to Property exclusion, which is identical to Exclusion J, at least as applied to the Named Insured.  *See* National Union-Hig Excess Policy §§ V(G)(5)–(6), VII(N) *amended by* Endorsement No. 2 (eff. Apr. 4, 2016) (including "Named Insured" as an "Insured").  "Courts must . . . avoid construing conflicting provisions and ambiguities within a policy in such a manner as to negate certain coverages, or in ways that render coverage provisions mere surplusage."  *See U.S. Underwriters Ins. Co. v. Affordable Hous. Found. Inc.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004) (summary order).  Adopting National Union's broad interpretation of the Contractors Exclusion to all property would leave the Damage to Property exclusion, which more narrowly applies to "particular part[s] of real property," without force or effect, as applied to the Named Insured.

finished." No. 16-CV-00952 (BSJ), 2018 WL 3849923, at *8 (D. Utah Aug. 13, 2018).[9] The court further held that the former interpretation governed because "[a]mong two plausible interpretations of an ambiguous exclusionary provision, the ambiguity is construed in favor of the policy holder." *Id.* at *9. The second case, *Insituform Technologies v. American Home Assurance Co.*, is simply not on point. There, the court held that the phrase "being installed, erected or worked upon" did not create a temporal limitation, such that the claim at issue would only be covered if the damage occurred during installation. *Insituform Techs. v. Am. Home Assur. Co.*, No. 04-CV-10487 (GAO), 2007 WL 2900469, at *3–4 (D. Mass. Sept. 28, 2007), *vacated and remanded on other grounds*, 566 F.3d 274 (1st Cir. 2009). Whether such a temporal limitation would or would not exist is not at issue here—rather, consistent with the court's reasoning, the plausible interpretations of the Contractors Exclusion hinge on what property is covered. *See id.* at *4 ("[I]n context, the phrase 'being installed, erected or worked upon' is best understood as modifying the noun 'property' that immediately precedes it and thus serves to distinguish damage to, in this case, the CIPP, from damage to other types of property.").

Accordingly, for the reasons stated in the Opinion and above, the Contractors Exclusion does not, as a matter of law, bar coverage for Consigli, and the Court denies National Union's motion for reconsideration.

*        *        *        *

---

[9] In their moving papers, National Union cites to a prior version of the Memorandum Decision and Order, which was filed on June 18, 2018, but later corrected in an amended opinion. *See* National Union Mot. at 4.

## CONCLUSION

For the foregoing reasons, the Court DENIES Harleysville's motion for reconsideration and/or clarification, and GRANTS IN PART and DENIES IN PART National Union's motion for reconsideration and/or clarification.  The Clerk of Court is respectfully directed to terminate Dkt. Nos. 350, 352, and 353.

It is further ORDERED that the parties shall meet and confer, and shall file a joint status letter within 14 days from the date of this Order, setting out their views on next steps in this action.

Dated: July 23, 2025
      New York, New York

                                        SO ORDERED.


                                        _____
                                        MARGARET M. GARNETT
                                        United States District Judge